# FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

# Exhibit D

to the Declaration of Dat Nguyen in Support of KAIFI's Motion for Leave to Amend Infringement Contentions

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP

2001 Ross Avenue
Dallas, TX 75201-2911
Tel 214.698.3100
www.gibsondunn.com

Nathan R. Curtis
Direct: +1 214.698.3423
Fax: +1 214.571.2961
NCurtis@gibsondunn.com

November 13, 2020

VIA ELECTRONIC MAIL

Enoch H. Liang
LTL Attorneys LLP
300 S. Grand Ave., 14th Floor
Los Angeles, California 90071
enoch.liang@ltlattorneys.com

Re:     *KAIFI LLC v. T-Mobile US, Inc. et al.*, Case No. 2:20-cv-281 (E.D. Tex.)

Dear Mr. Liang:

I write on behalf of the Defendants (collectively, "T-Mobile") regarding KAIFI's deficient Disclosure of Asserted Claims & Infringement Contentions ("Infringement Contentions") to T-Mobile, served on October 30, 2020. KAIFI's Infringement Contentions failed to meet the basic requirements of P.R. 3-1 in the Eastern District of Texas. As a result, T-Mobile is unable to discern KAIFI's theories of infringement, undermining the notice function of infringement contentions and substantially impairing T-Mobile's ability to prepare its defenses.

Below is a non-exhaustive identification of deficiencies in KAIFI's Infringement Contentions. T-Mobile requests that KAIFI amend its contentions promptly to address these issues. T-Mobile has already been prejudiced by KAIFI's failure to provided adequate contentions. The prejudice will be compounded the longer these issues go unresolved, particularly as the deadline for invalidity contentions approaches.

### A.     Deficiencies in Allegations Against Wi-Fi Calling

P.R. 3-1(c) requires "identifying specifically where each element of each asserted claim is found within each Accused Instrumentality." The purpose of early contentions is for KAIFI "to solidify, to the best it can at this stage, the theory of how the accused products infringe the asserted claims." *See Traxcell Techs., LLC v. Huawei Techs. USA Inc.*, No. 2:17-cv-00042, 2017 WL 6559256, at *4 (E.D. Tex. Dec. 21, 2017). But KAIFI's Infringement Contentions against T-Mobile's Wi-Fi Calling system "make it impossible . . . to determine the theory of infringement with any certainty." *Id.* Specifically, KAIFI's claim chart is a maze of disconnected identifications of elements alleged to be a part of the Wi-Fi Calling system, without any "clear linkage" as to how KAIFI contends these elements fit together to satisfy the requirements of the claims. *Id.* Exemplary examples of these deficiencies are set forth below:

# GIBSON DUNN

Enoch H. Liang
November 13, 2020
Page 2

***"a location register that stores location information of the data communication terminal"* (claim 1)**.  Despite the claims requiring "a location register that stores location information," KAIFI's Infringement Contentions treat "location register" and "location information" separately, without putting T-Mobile on notice of in which alleged "location register" KAIFI contends the alleged "location information" is stored, as required by the claims.  Specifically, T-Mobile understands KAIFI's Infringement Contentions to identify three alleged "location registers": the Home Subscriber Server ("HHS"), the 3GPP Authentication, Authorization, and Accounting ("AAA") Server, and the Gateway Mobile Location Center ("GMLC").  Inf. Cont., App'x 1 at 17–19.  T-Mobile also understands KAIFI's Infringement Contentions to separately identify nine purported pieces of "location information."[1]  While KAIFI's Infringement Contentions allege that the PDN Address, subscribed QoS profile, and APN are stored in the HSS, it does not ever identify where the other six alleged items of "location information" are stored—*i.e.*, in the HSS, AAA Server, or GMLC.  *See id.*  T-Mobile is entitled to understand KAIFI's theories as to what *each* alleged "location register" is and what "location information" *each* stores.

***"a router that determines the location of the data communication terminal stored in the location register"* (claim 1)**.  KAIFI's Infringement Contentions are also deficient with respect to setting forth KAIFI's theories as to how a "router . . . determines the location of the data communication terminal stored in the location register."  T-Mobile understands that the only "router" accused in KAIFI's Infringement Contentions is the Packet Data Network Gateway ("PDN GW").  The Infringement Contentions allege that the PDN GW "retrieves subscriber data stored in the HSS, including location information stored in the location register."  *Id.* at 22.  The chart does not, however, identify *what* "location information" from the HSS it is referring to, nor *how* such information is used to "determine[] the location of the data communication terminal stored in the location register."  *See id.*  Additionally, the Infringement Contentions do not ever state how—if at all—the alleged router determines the location of the data communication terminal from the other alleged "location registers" identified in the prior element—*i.e.*, the AAA Server and GMLC.  T-Mobile is entitled to understand KAIFI's theories as to how the alleged "router" (PDN GW) "determines the location of the data communication terminal stored in the location register."

***"a second step of determining . . . the received indoor system ID information is identical to indoor system ID information stored in the location register"* (claim 12)**.  KAIFI's Infringement Contentions do not provide notice of how KAIFI contends T-Mobile's Wi-Fi

---

[1] The identified "location information" is: PDN Address, subscribed QoS profile, Access Point Name ("APN"), Global Positioning System ("GPS") information, Cell Identification ("CID"), Time Difference of Arrival ("TDOA"), a Binding Cache Entry ("BCE"), flow binding information, and IP flow information.  Inf. Cont., App'x 1 at 19–20.

**GIBSON DUNN**

Enoch H. Liang
November 13, 2020
Page 3

Calling system "determin[es] whether ... the received indoor system ID information is identical to indoor system ID information stored in the location register." The only alleged "indoor system ID information" in the Infringement Contentions is the Wi-Fi Service Set Identifier ("SSID"). *Id.* at 58–61. But the chart for this limitation never alleges that the SSID is stored in a "location register," let alone that the SSID stored in a location register is compared to one received by the data communication terminal. T-Mobile is entitled to know how KAIFI alleges this limitation is met in T-Mobile's Wi-Fi Calling system—*i.e.*, what alleged "location register" stores the SSID and how it is compared with one received by the data communication terminal.

*"storing the indoor location"* **and** *"storing the outdoor location"* **(claim 12).** The third step of the asserted independent method claim requires "storing the indoor location into the location register" and the sixth step requires "storing the outdoor location into the location register." The Infringement Contentions, however, do not clearly identify what information elements KAIFI contends are the "indoor location" and "outdoor location," or what alleged "location register" those information elements are stored in. T-Mobile is entitled to this information to be able to prepare its case.

B.   Deficiencies in Allegations Against Non-Wi-Fi Calling Services

KAIFI's contentions fail to provide a chart for each of the Accused Instrumentalities identified. *See* Inf. Cont. at 2–3. Under P.R. 3-1(c), infringement contentions shall contain "[a] chart identifying specifically where each element of each asserted claim is found within *each* Accused Instrumentality." *See* P.R. 3-1(c) (emphasis added). While "[i]t is possible for a plaintiff to use a single chart for multiple products, if separate charts would be identical for each product," the Court has held that "broad conclusory allegations that the products are similar do not allow Plaintiffs to circumvent the Local Rules." *UltimatePointer, LLC v. Nintendo Co.*, No. 6:11-CV-496, 2013 WL 12140173, at *3 (E.D. Tex. May 28, 2013). Instead, if the plaintiff chooses to "designate and chart only an exemplar accused infringing product, Plaintiff must provide an explanation of the technical and functional identity of the products represented," and "compare each exemplar product to each asserted patent on a claim by claim, element by element basis." *Id.*; *see also Traxcell Techs.*, 2017 WL 6559256, at *5 ("Traxcell's contentions do not chart each accused product or otherwise identify how each accused product is technically or functionally equivalent to a charted product, as required by the local patent rule. There is no way for the defendants to channel discovery or prepare for claim construction without such an indication.").

KAIFI's Infringement Contentions present Wi-Fi Calling as a representative product but provide only conclusory statements that the other Accused Instrumentalities "utilize the same or substantially similar technology." *See* Inf. Cont. at 3. KAIFI further "contends that these

**GIBSON DUNN**

Enoch H. Liang
November 13, 2020
Page 4

infringement contentions are equally applicable to all" of the Accused Instrumentalities, but provides no further explanation for why this is so. *See* Inf. Cont., App'x 1 at 4. These conclusory statements are insufficient. Although T-Mobile maintains that the Accused Instrumentalities are not materially similar, to the extent that KAIFI still believes they are, KAIFI must "provide an explanation of the technical and functional identity of the products represented," and "compare each exemplar product to each asserted patent on a claim by claim, element by element basis." *UltimatePointer*, 2013 WL 12140173, at *3. KAIFI's Infringement Contentions fail to provide *any* explanations regarding the technical and functional similarities in the accused products in contravention of the law.

Additionally, aside from the lack of compliance with the Local Rules, the allegation that these Accused Instrumentalities function in a substantially similar manner to Wi-Fi Calling is false. KAIFI knows—or at least should know—that the over-the-top ("OTT") services do not function the same way as Wi-Fi Calling. Indeed, this was something that was raised in a prior litigation brought by KAIFI asserting the same patent. *See, e.g.*, *KAIFI LLC v. AT&T Inc.*, No. 2:19-cv-00138-JRG, Dkt. 197 (E.D. Tex. June 18, 2020). By way of example only, KAIFI's Infringement Contentions present a figure (reproduced below with annotations) that purports to show interworking between 3GPP access (*e.g.*, LTE) and non-3GPP access (*e.g.*, Wi-Fi) for Wi-Fi Calling. *See* Inf. Cont., App'x 1 at 21 (citing KAIFI_0004430 at 4454). As the figure shows and the Infringement Contentions allege, "IP traffic runs through the PDN GW," regardless of whether a device is connected via LTE or Wi-Fi. *Id.* at 22. OTT services do not operate this way; instead, as shown by the red annotation below, the data path for OTT services when a device is connected via Wi-Fi bypasses the entire core network and PDN GW. KAIFI's Infringement Contentions do not explain how the PDN GW serves as the claimed "router" for such services.



**GIBSON DUNN**

Enoch H. Liang
November 13, 2020
Page 5

Inf. Cont., App'x 1 at 21 (annotated); *see also KAIFI LLC v. AT&T Inc.*, No. 2:19-cv-00138-JRG, Dkt. 197 at 8 (E.D. Tex. June 18, 2020) (showing Wi-Fi data path for OTT applications does not pass through PDN GW).

It is therefore unreasonable for KAIFI to continue to allege that non-Wi-Fi Calling Accused Instrumentalities such as OTT services are adequately represented by the single chart for Wi-Fi Calling. KAIFI must provide separate claim charts for each Accused Instrumentality as well as remedy the following deficiencies for the non-Wi-Fi Calling services that arise due to KAIFI's reliance on the Wi-Fi Calling chart. In addition to this deficiency in the allegations against OTT services, other exemplary examples of these deficiencies are set forth below:

***T-Home Internet and T-Mobile Wi-Fi Services***. T-Home Internet and T-Mobile Wi-Fi Services[2] are not functionally similar to Wi-Fi Calling. These services from T-Mobile simply provide users with connectivity to the internet. KAIFI's Infringement Contentions do not explain how, if at all, these services relate to "seamless switching or hand-off between [T-Mobile's] cellular (LTE) network and a Wi-Fi network." Additionally, the Infringement Contentions do not explain how these services, which rely on LTE connectivity to provide internet access, are "connected with the internet network via a wire." *See* '728 patent, cl. 1. The Infringement Contentions thus fail to provide T-Mobile with adequate notice of KAIFI's infringement theories with respect to these services.

***T-Vision***. T-Vision[3] is not functionally similar to Wi-Fi Calling. T-Vision is a TV service provided to certain T-Mobile customers, not a service for "provid[ing] roaming of voice/data signals," as KAIFI alleges with respect to Wi-Fi Calling. *See* Inf. Cont., App'x 1 at 1, 4. KAIFI's Infringement Contentions fail to provide an infringement theory with respect to these television services.

***Binge On and Music Freedom***. KAIFI's allegations with respect to Binge On and Music Freedom are also deficient. The Infringement Contentions allege that "T-Mobile also provides roaming of voice/data signals, such as media streaming through Binge On, which enables on demand streaming on T-Mobile Wireless, with 'seamless' switching between networks." *Id.* at 4 (citing KAIFI_0054237 and KAIFI_0054242). But the T-Mobile webpages cited in support of this allegation say *nothing* about "seamless" switching for Binge On. Binge On[4]

---

[2] https://www.t-mobile.com/isp.

[3] https://www.t-mobile.com/tvision.

[4] https://www.t-mobile.com/support/plans-features/unlimited-video-streaming-with-binge-on.

*(Cont'd on next page)*

**GIBSON DUNN**

Enoch H. Liang
November 13, 2020
Page 6

and Music Freedom[5] are unlimited streaming services offered by T-Mobile that allow subscribers to stream video and/or music without having that data deducted from their monthly data allowance. KAIFI's Infringement Contentions fail to allege how these services meet any of the claim elements.

***Other OTT Services***. Finally, KAIFI accuses "any and all 'over the top' media streaming services and IP Multimedia Subsystem services," but as explained above, these services bypass T-Mobile's core network and PDN GW, thus making Wi-Fi Calling non-representative with respect to them. Furthermore, to the extent KAIFI intends to include additional products under this umbrella, it must specify the exact products it is accusing of infringement. *See Tivo Inc. v. Samsung Elecs. Co.*, No. 2:15-CV-1503-JRG, 2016 WL 5172008, at *3 (E.D. Tex. July 22, 2016) ("TiVo cannot simply rely on the 'same or similar functionality' language to sweep in additional products that have not been identified with sufficient specificity . . . .").

Because the Accused Instrumentalities contain multiple material differences as explained above, KAIFI is required to provide T-Mobile with a chart for each of the Accused Instrumentalities. *See Alacritech Inc. v. CenturyLink, Inc.*, No. 2:16-CV-00693-JRG-RSP, 2017 WL 3007464, at *4 (E.D. Tex. July 14, 2017) (requiring that the plaintiff "chart every model of the . . . accused instrumentalities" if there are material differences among the accused instrumentalities).

\*   \*   \*

Please confirm that KAIFI will promptly remedy the numerous deficiencies contained in its Infringement Contentions, including the non-exhaustive issues identified above.

Sincerely,

Nathan Curtis

---

[5] https://www.t-mobile.com/offers/free-music-streaming.