

# EXHIBIT 5

**to T-Mobile's Responsive Claim Construction Brief**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

KAIFI LLC,

            Plaintiff,

      v.

AT&T INC.  ET AL.

           Defendants.

CASE No. 2:19-cv-138-JRG

JURY TRIAL DEMANDED

Honorable Rodney Gilstrap

## DEFENDANT AT&T'S MOTION TO STRIKE CERTAIN PORTIONS OF THE EXPERT REPORT OF BRIAN T. KELLEY, PH.D.

# TABLE OF CONTENTS

<u>Page</u>

I.     INTRODUCTION .......................................................................................... 1

II.    FACTUAL BACKGROUND ........................................................................ 3

III.   LEGAL STANDARD .................................................................................. 4

IV.   THE PORTIONS OF DR. KELLEY'S INFRINGEMENT EXPERT REPORT
THAT RELY ON PREVIOUSLY UNDISCLOSED THEORIES SHOULD BE
STRICKEN .................................................................................................. 4

     A.    Dr. Kelley's Infringement Theory Regarding the "Location Register" in
Claim 1 Should Be Stricken for Not Being Limited to the Three
Components Identified in KAIFI's Infringement Contentions and for
Introducing Combinations. .................................................................. 5

     B.    Dr. Kelley's Infringement Theory Regarding the Claimed "Location
Information" in Claim 1 Should Be Stricken for Introducing Twelve
New Items Not Identified in KAIFI's Infringement Contentions........................ 10

     C.    Dr. Kelley's Infringement Theory Regarding the Claimed "Mobile IP" in
Claim 5 Should Be Stricken for Abandoning the Four Items Identified in
KAIFI's Infringement Contentions.................................................... 13

V.    CONCLUSION.......................................................................................... 14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Biscotti Inc. v. Microsoft Corp.*,
   No. 2:13-cv-01015-JRG-RSP, 2017 WL 2267283 (E.D. Tex. May 24, 2017) ........................4

*Connectel, LLC v. Cisco Sys., Inc.*,
   391 F. Supp. 2d 526 (E.D. Tex. 2005) ....................................................................................2

*Opal Run LLC v. C & A Marketing, Inc.*,
   No. 2:16-cv-24-JRG-RSP, 2017 WL 3381344 (E.D. Tex. May 15, 2017) .............................4

*ROY-G-BIV Corp. v. ABB, Ltd.*,
   63 F. Supp. 3d 690 (E.D. Tex. 2014) ...............................................................................2, 4, 5

*Semcon IP Inc. v. ZTE Corp.*,
   No. 2:16-cv-00437-JRG-RSP, 2018 WL 4501808 (E.D. Tex. Feb. 28, 2018) .................2, 3, 5

*United States v. Proctor & Gamble Co.*,
   356 U.S. 677 (1958) ........................................................................................................3, 5

**Other Authorities**

M. Olsson *et al.*, *EPC and 4G Packet Networks* (2d ed. 2013) ....................................................13

## TABLE OF ABBREVIATIONS

| Abbreviation | Term / Document(s) |
|---|---|
| '728 Patent | U.S. Patent No. 6,922,728 |
| AT&T | Defendants AT&T Corp., AT&T Communications, LLC, AT&T Mobility LLC, and AT&T Services, Inc., collectively |
| Dkt. | Docket Number |
| KAIFI | Plaintiff KAIFI LLC |
| Kelley Report | Expert Report of Brian T. Kelley, Ph.D. (May 4, 2020) |

**TABLE OF EXHIBITS[1]**

| Exhibit | Reference |
|---------|-----------|
| **Ex. 1** | Excerpts from Appendix 1 to KAIFI's Disclosure of Asserted Claims & Infringement Contentions (Sept. 6, 2019) |
| **Ex. 2** | Excerpts from Expert Report of Brian T. Kelley, Ph.D. (May 4, 2020) |
| **Ex. 3** | Excerpts from Expert Report of Prof. Stephen B. Wicker, Ph.D. Regarding Non-Infringement of U.S. Patent No. 6,922,728 (June 1, 2020) |

---

[1]  Exhibits are attached to the Declaration of Neema Jalali in Support of AT&T's Motion to Strike Certain Portions of the Expert Report of Brian T. Kelley, Ph.D., filed concurrently herewith.

## I.     INTRODUCTION

The infringement expert report of KAIFI's technical expert, Brian T. Kelley ("Dr. Kelley"), raises new infringement theories that impermissibly exceed the scope of KAIFI's infringement contentions in three respects.  Namely, Dr. Kelley raises new infringement theories that rely on: (1) new components and never-before-seen combinations to satisfy the "location register" limitation, (2) newly disclosed items to satisfy the "location information" limitation, and (3) newly disclosed technologies to satisfy the "mobile IP" limitation.  AT&T respectfully requests that these previously undisclosed theories be stricken from Dr. Kelley's opening report.

**Location Register**.  KAIFI's infringement contentions identify only three components in AT&T's network—the GMLC, HSS, and AAA Server—as allegedly satisfying the "location register" in claim 1 of the '728 Patent, but only independently, and not in combination.  Indeed, KAIFI's infringement contentions are devoid of any theory whereby components are combined to meet the "location register" limitation.  Dr. Kelley's report abandons the GMLC (while maintaining the HSS and AAA Server) and goes on to accuse *seven previously undisclosed components* in never-before-seen combinations to satisfy the location register.  Dr. Kelley's report should be limited to the theory disclosed in KAIFI's infringement contentions that the "location register" in claim 1 is independently met by the HSS or AAA Server.  Dr. Kelley's new theories based on the seven new components (whether alone or in combination), or based on any other combination of components, should be stricken from his report.

**Location Information**.  KAIFI's infringement contentions alleged that the "location information" in claims 1 and 12 of the '728 Patent may be met only by the following items: a PDN Address, subscribed QoS profile, Access Point Name, GPS coordinates, CID, or TDOA.  Dr. Kelley's report abandons three of these items, and newly alleges that the claimed "location information" can be any one of *twelve new items* that were nowhere to be found in KAIFI's

contentions.  Again, Dr. Kelley should not be permitted to allege these new theories that were not in KAIFI's contentions for "location information."  Dr. Kelley's new theories should be stricken from his report.

**Mobile IP**.  KAIFI's infringement contentions alleged that the "mobile IP" element in claim 5 may be met only by Dual Stack Mobile IP, Proxy Mobile IP, IPv6, and IPv4.  Dr. Kelley *entirely abandons* KAIFI's infringement theory and alleges that the "mobile IP" element may be met by *three technologies* that were nowhere in KAIFI's infringement contentions.  Dr. Kelley should again be limited to the infringement theories for "mobile IP" in KAIFI's contentions, and his new theories should be stricken.

The law is clear:  "Expert infringement reports may not introduce theories not previously set forth in infringement contentions."  *ROY-G-BIV Corp. v. ABB, Ltd.*, 63 F. Supp. 3d 690, 699 (E.D. Tex. 2014).  "The notice function of infringement contentions 'focuses discovery and narrows issues for claim construction, summary judgment, and trial.'"  *Semcon IP Inc. v. ZTE Corp.*, No. 2:16-cv-00437-JRG-RSP, 2018 WL 4501808, at *2 (E.D. Tex. Feb. 28, 2018) (quoting *Connectel, LLC v. Cisco Sys., Inc.*, 391 F. Supp. 2d 526, 526 (E.D. Tex. 2005)).  Dr. Kelley's opinions with respect to "location register," "location information," and "mobile IP" are premised on infringement theories that were not disclosed in KAIFI's infringement contentions.  Moreover, KAIFI has never sought to amend its infringement contentions to add those new theories, and it is too late for KAIFI to seek to amend.

The parties should be working to narrow the issues for trial at this stage of the case.  *See Semcon*, 2018 WL 4501808, at *2 ("Infringement contentions also serve another purpose, . . . which is not only to ascertain facts but also to determine what the adverse party contends they are, and what purpose they will serve, so that the issues may be narrowed, the trial simplified, and time

and expense conserved." (quotations omitted)).[2]  Yet KAIFI is seeking to *expand* the scope of its infringement case through its expert report.  This unfairly prejudices AT&T, which relied on KAIFI's contentions to develop its defenses through discovery and claim construction.  *See id.* ("Infringement contentions augment existing discovery and pretrial procedures, but the goal of each of these devices is to 'make a trial less a game of blind man's buff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent.'" (quoting *United States v. Proctor & Gamble Co.*, 356 U.S. 677, 682 (1958))).

As such, AT&T respectfully requests that Dr. Kelley's new infringement theories be stricken from his expert report on infringement.[3]

## II.   FACTUAL BACKGROUND

The asserted '728 Patent relates to "an internet network connecting and roaming system and method providing internet communication service to a data communication terminal carried by a user moving indoors or outdoors."  Dkt. 104 (Cl. Const. Order) (quoting '728 Patent, Abstract).  KAIFI's P.R. 3-1 infringement contentions, served September 6, 2019, focus on an AT&T service known as Wi-Fi Calling.[4]  KAIFI has never sought to amend or supplement its infringement contentions in this case prior to the service of expert reports.  Additionally, KAIFI's thirty-day window within which it could have sought to amend its infringement contentions if it

---

[2]  Indeed, AT&T recently served its final prior art election, limiting its prior art case to nine references and combinations.

[3]  This motion does not seek to strike any theories in Dr. Kelley's expert report that were properly within the scope of KAIFI's infringement contentions.

[4]  With AT&T's Wi-Fi Calling service, a user's mobile device may conduct a voice call over a Wi-Fi connection instead of a cellular connection, and may switch between Wi-Fi and cellular connections during the call without the call being dropped, when certain requirements are met. KAIFI's Complaint, filed April 26, 2019, identified Wi-Fi Calling as the sole Accused Instrumentality.  *See* Dkt. 1 (Compl.) ¶¶ 24–30; Dkt. 1-3 (Claim Chart for '728 Patent).

believed in good faith that the Court's Claim Construction Ruling so required ended on May 18, 2020.  *See* P.R. 3-6(a)(1); Dkt. 104 (Cl. Const. Order).

On May 4, 2020, KAIFI served an expert report of infringement by Dr. Brian T. Kelley. However, certain portions of Dr. Kelley's expert report rely upon new infringement theories that were not disclosed in KAIFI's infringement contentions, and thereby impermissibly fall outside the scope of KAIFI's infringement contentions.  AT&T brings this motion to strike these new infringement theories in Dr. Kelley's expert report.

## III.    LEGAL STANDARD

Under P.R. 3-1, the party claiming patent infringement must serve "[a] chart identifying specifically where each element of each asserted claim is found within each Accused Instrumentality."  P.R. 3-1(c).

"Expert infringement reports may not introduce theories not previously set forth in infringement contentions."  *ROY-G-BIV*, 63 F. Supp. 3d at 699; *see also Biscotti Inc. v. Microsoft Corp.*, No. 2:13-cv-01015-JRG-RSP, 2017 WL 2267283, at *3–4 (E.D. Tex. May 24, 2017) (striking expert opinion regarding "Broadcast API source code" where the words "Broadcast API" could not be found in plaintiff's infringement contentions); *Opal Run LLC v. C & A Marketing, Inc.*, No. 2:16-cv-24-JRG-RSP, 2017 WL 3381344, at *1–2 (E.D. Tex. May 15, 2017) (striking portions of expert report on infringement that were directed to a new theory "focuse[d] on a different section of [defendant's] website . . . in a different markup language" than what was identified in the infringement contentions).

## IV.    THE PORTIONS OF DR. KELLEY'S INFRINGEMENT EXPERT REPORT THAT RELY ON PREVIOUSLY UNDISCLOSED THEORIES SHOULD BE STRICKEN

Dr. Kelley's opening expert report on infringement improperly exceeds the scope of KAIFI's infringement contentions with respect to three limitations:  (1) "location register" in

claims 1 and 12 of the '728 Patent, (2) "location information" in claims 1 and 12 of the '728 Patent, and (3) "mobile IP" in claim 5 of the '728 Patent.[5]  Dr. Kelley's new infringement theories with respect to these limitations unfairly prejudice AT&T, which relied on KAIFI's infringement contentions to develop its defenses through discovery and claim construction.  *See Semcon*, 2018 WL 4501808, at *2 ("The notice function of infringement contentions 'focuses discovery and narrows issues for claim construction, summary judgment, and trial.'" (quoting *Proctor & Gamble Co.*, 356 U.S. at 682)).  Dr. Kelley's new infringement theories should be stricken from his report. *See ROY-G-BIV*, 63 F. Supp. 3d at 699.

A.   **Dr. Kelley's Infringement Theory Regarding the "Location Register" in Claim 1 Should Be Stricken for Not Being Limited to the Three Components Identified in KAIFI's Infringement Contentions and for Introducing Combinations.**

Claim 1 of the '728 Patent calls for, among other things, a "location register that stores location information of the data communication terminal received through the indoor network or outdoor wireless internet network."  Dkt. 1-2 ('728 Patent), cl. 1.  Claim 12 similarly requires a "location register."  *Id.*, cl. 12.

KAIFI's infringement contentions alleged that only three components in AT&T's network each constitute or contain the claimed "location register" that stores "location information" in claim 1—*i.e.*: (1) the Gateway Mobile Location Center ("GMLC"), (2) the Home Subscriber Server ("HSS"), and/or (3) the 3GPP Authentication, Authorization, and According Server ("AAA Server").  Ex. 1 at 19.  Indeed, according to KAIFI's infringement contentions, "[t]he GMLC, HSS, and/or 3GPP AAA Server stores location information of the data communication terminal

---

[5]   KAIFI asserts claim 1 and its dependent claims 2, 3, 5, 7, 10, and 11, as well as claim 20, which depends from independent claim 12.  For the "location register" and "location information" limitations, all dependent claims are included in this motion by their dependency on claims 1 or 12.

received through the indoor network or outdoor wireless internet network," which is a principal requirement for the claimed "location register." *Id.* KAIFI's infringement contentions do not allege that any other components store "location information" as claimed, such that KAIFI could argue that those components were alleged to be the claimed location register based on their storage of "location information."[6] *See id.*

Dr. Kelley's infringement expert report impermissibly exceeds KAIFI's theory as to what may constitute the "location register." Dr. Kelley alleges that the claimed location register can be, or can be within, *nine different network components*. Only *two* of these nine components—the HSS and AAA Server—were disclosed in KAIFI's infringement contentions.[7] The *other seven* components are newly asserted in Dr. Kelley's report, and thus are impermissible new theories of infringement.

The following chart compares the components that may constitute or contain the claimed "location register" in KAIFI's infringement contentions versus in Dr. Kelley's expert report:

| "Location Register" in KAIFI's Infringement Contentions | "Location Register" in Kelley Report |
|---|---|
| HSS | HSS |
| AAA | AAA |
| GMLC | *[Dr. Kelley report abandons this theory]* |
| *[All absent from KAIFI's Infringement Contentions]* | Session Initiation Protocol ("SIP") Server ("SIP Server") |
| | eNodeB ("eNB") |
| | Mobility Management Engine ("MME") |
| | Serving Gateway ("SGW") |
| | Packet Gateway ("PDN GW") |
| | Evolved Packet Gateway ("ePDG") |

---

[6] KAIFI's infringement claim chart referenced certain other components in the "cell" corresponding to the limitation of claim 1 that includes the "location register" limitation. *See* Ex. 1 at 17–21. However, *nowhere* did KAIFI's infringement claim chart allege that any of these other components (besides the GMLC, HSS, or AAA Server) may constitute or include the claimed "location register." *See id.*

[7] Dr. Kelley's report does not identify the GMLC as a location register, effectively dropping that component from KAIFI's infringement theory. *See* Ex. 1 at 19.

| "Location Register" in KAIFI's Infringement Contentions | "Location Register" in Kelley Report |
|---|---|
| | Secure Entitlement Server ("SES") |
| | "Function" of P-CSCF/SIP Server, eNB, MME, SGW, PGW, ePDG, HSS, AAA, SES |

*See* Ex. 2 ¶¶ 447–49. All these new theories should be stricken from Dr. Kelley's report.

The first (and most extensively discussed) of the new "location register" components in Dr. Kelley's report is the SIP Server, the discussion of which spans fourteen pages of Dr. Kelley's report. Ex. 2 ¶¶ 450–69.[8] Dr. Kelley's report explains that the SIP Server is a separate and distinct network component from the GMLC, HSS, and AAA Server. *See, e.g.*, *id.* ¶¶ 426, 447. The SIP Server did not appear anywhere in KAIFI's infringement contentions. Indeed, neither the term "Session Initiation Protocol" nor "SIP" appears anywhere in KAIFI's infringement contentions for any element of any claim. Dr. Kelley also provides no explanation regarding how KAIFI's infringement contentions put AT&T on notice of any infringement theory premised on the SIP Server satisfying the location register limitation. *See id.* ¶¶ 450–69.

Second, Dr. Kelley alleges that the "location register" may be an eNodeB (or "eNB"). *Id.* ¶ 426. An eNB is a cellular base station. *See id.* ¶ 196. Neither eNodeBs, nor base stations more generally, were identified in KAIFI's infringement contentions. Moreover, Dr. Kelley also provides no explanation regarding how KAIFI's infringement contentions put AT&T on notice of any infringement theory premised on eNBs satisfying the location register limitation. *See id.* ¶¶ 470–72.

Third, Dr. Kelley alleges that the "location register" may be an MME. *Id.* ¶ 426. According to Dr. Kelley, the MME handles authentication, mobility management, and subscriber

---

[8] By contrast, the two alleged "location register" components that *were* identified in KAIFI's infringement contentions—the HSS and AAA Server—are given just over six pages of discussion combined in Dr. Kelley's report. *See* Ex. 2 ¶¶ 477–84.

location tracking, among other functions.  *See id.* ¶ 470.  Although the MME was referenced in

KAIFI's infringement contentions, it was referenced only as a component that the "location

information is *utilized in relation with*," as follows:

> various forms of location information are provided by the Accused
> Instrumentalities, including but not limited to Cell Identification ("CID") and Time
> Difference of Arrival ("TDOA").  Such location information is utilized in relation
> with various aspects of the Accused Instrumentalities, including but not limited
> to . . . Mobility Management Entity ("MME") . . . .

Ex. 1 at 20 (emphasis added).[9]  KAIFI's infringement contentions did not allege that the MME is

or contains the claimed "location register," or even that the MME stores the claimed "location

information."  *See id.*  Nor does Dr. Kelley explain how KAIFI's infringement contentions put

AT&T on notice of any infringement theory premised on the MME satisfying the location register

limitation.  *See* Ex. 2 ¶¶ 470–72.

Fourth, Dr. Kelley alleges that the SGW includes a "location register."  *See id.* ¶¶ 473–74.

However, the SGW was not identified in KAIFI's infringement contentions for any claim element.

Likewise, Dr. Kelley provides no explanation regarding how KAIFI's infringement contentions

put AT&T on notice of any infringement theory premised on the SGW satisfying the location

register limitation.  *See id.*

Fifth and sixth, Dr. Kelley asserts that the PDN GW and ePDG, respectively, include a

location register.  *See id.* ¶ 475 ("PGW has a 3GPP-specified location register"), ¶ 476 ("location

information . . . is stored in the location register of the ePDG").  Although the PDN GW and ePDG

were referenced in KAIFI's infringement contentions, such reference was limited to the allegation

---

[9]  Even where components are referenced in KAIFI's infringement contentions, Dr. Kelley
should not be permitted to assert infringement theories based on those components beyond the
theories set forth in KAIFI's contentions.  For example, Dr. Kelley should not be permitted to
opine that the MME is a location register as KAIFI's contentions did not disclose the MME as
the claimed location register.

that the PDN GW and ePDG *interface with* the AAA Server (which itself *is* an alleged "location register" in KAIFI's contentions). Ex. 1 at 19 ("The HSS communicates through the 3GPP AAA Server, which interfaces with logical entities in the EPC, including the Packet Data Network Gateway ('PDN GW') over the S6b interface; the Evolved Packet Data Gateway ('ePDG') over the SWm interface . . . ."). KAIFI's contentions did not allege that either the PDN GW or ePDG is or contains the claimed "location register." Dr. Kelley does not provide any explanation regarding how KAIFI's infringement contentions put AT&T on notice of any infringement theory premised on PDN GW or ePDG satisfying the location register limitation. *See* Ex. 2 ¶¶ 475, 476.

Seventh, Dr. Kelley asserts that the SES meets the "location register" element. *Id.* ¶ 485. However, KAIFI's infringement contentions do not identify the SES for any claim element. Dr. Kelley opines that the SES "interfaces with the AAA Server," but provides no explanation regarding how KAIFI's infringement contentions put AT&T on notice of any infringement theory premised on the SES satisfying the location register limitation. *See id.*

Finally, beyond Dr. Kelley's assertions that these seven newly identified components may individually constitute or contain the claimed "location register" in claim 1, Dr. Kelley sets forth yet another new theory based on the *amalgamation* of multiple components into a single alleged "location register." Specifically, Dr. Kelley alleges that "the location register can be represented as a function of" the nine components above that he accuses as the "location register," as follows:

$$LocationRegister \equiv (P - CSCF/SIP_{server}, eNB, MME, SGW, PGW, ePDG, HSS, AAA, SES)$$

Ex. 2 ¶ 448.

Dr. Kelley's theory that the "location register" in claim 1 is a "function" of nine discrete components is nowhere to be found in KAIFI's infringement contentions. Indeed, KAIFI's contentions did not contain *any* theory that the claimed "location register" is a combination of

components—let alone a combination that includes Dr. Kelley's seven newly alleged "location register" components.[10]  Dr. Kelley's "function" theory impermissibly exceeds the scope of KAIFI's contentions, and should also be stricken.

Accordingly, Dr. Kelley's opinions regarding any alleged "location register" other than the HSS and AAA Server, including in paragraphs 426, 446–76, and 485–86, should be stricken from his infringement expert report.[11]

### B. Dr. Kelley's Infringement Theory Regarding the Claimed "Location Information" in Claim 1 Should Be Stricken for Introducing Twelve New Items Not Identified in KAIFI's Infringement Contentions.

Claim 1 of the '728 Patent also calls for, among other things, a "location register that stores *location information*." Dkt. 1-2 ('728 Patent), cl. 1.  Claim 12 (the only other independent claim) similarly requires providing data "in accordance with location information." *Id.*, cl. 12.  KAIFI's infringement contentions contain six specific theories for the "location information": (1) a "PDN

---

[10]  In supporting his novel theory, Dr. Kelley opines that "[a] location register can be thought of not as a static 'component,' but rather as a dynamic 'object.'"  Ex. 2 ¶ 428.  However, as discussed, KAIFI's infringement contentions identified three network components as the alleged "location register," and the contentions did not assert any "dynamic 'object'" consisting of one or more of these components.  *See* Ex. 1 at 17–21.

[11]  Dr. Kelley's infringement expert report also appears to include an assertion that the user equipment (UE) (*i.e.*, the mobile device) itself includes a "location register."  *See* Ex. 2 ¶¶ 447–448 ("There is location register in the UE, that is, the AT&T Phones.").  However, Dr. Kelley clarifies in his expert report that it is not his opinion that such "location register" in the UE is the "location register" that he alleges meets the "location register" limitation of claim 1.  In discussing the "location register" required by claim 1, Dr. Kelley explains that "[t]he location register being referred to here [in the '728 patent] is on the network side."  *See id.* ¶¶ 447–448 (emphasis added).  Thus, since the UE is not "on the network side," Dr. Kelley does not set forth any opinion in his infringement expert report that the "location register" in the UE meets the "location register" limitation of claim 1.  Indeed, this is consistent with KAIFI's infringement contentions, as KAIFI did not allege in its infringement contentions that the UE is or contains a "location register."  *See* Ex. 1 at 17–21.  However, to the extent KAIFI contends otherwise—*i.e.*, to the extent KAIFI argues that Dr. Kelley's infringement report does include an opinion that the UE is or contains a "location register" that meets the "location register" requirement of claim 1—AT&T respectfully requests that such opinion be stricken from Dr. Kelley's report as well, since such allegation was not disclosed in KAIFI's infringement contentions.

Address," (2) a "subscribed QoS profile," (3) an "Access Point Name (APN)," (4) "Global Positioning System (GPS)" information, (5) a "Cell Identification ('CID')," and (6) "Time Difference of Arrival ('TDOA')." Ex. 1 at 19–20 ("location information" in claim 1), 85 (referring back to claim 1). Regardless, Dr. Kelley's expert report abandons half of KAIFI's theories for what may constitute the claimed "location information" in the asserted claims. Instead, Dr. Kelley alleges that the claimed "location information" is one of *fourteen* types of information allegedly stored throughout AT&T's network, only three of which were in KAIFI's infringement contentions. All twelve new theories of "location information" in Dr. Kelley's report should be stricken.

The chart below shows the wide-ranging allegations Dr. Kelley makes in his infringement report regarding the claimed "location information," only three of which line up with KAIFI's infringement contentions:

| "Location Information" in KAIFI's Infringement Contentions | "Location Information" in Kelley Report |
|---|---|
| PDN Address | PDN Address (¶ 475)[12] |
| Subscribed QoS Profile | *[Dr. Kelley abandons this theory]* |
| Access Point Name (APN) | *[Dr. Kelley abandons this theory]* |
| Global Positioning System (GPS) information | Geolocation information (¶¶ 461–462, 537)[13] |
| Cell Identification (CID) | Cell ID, Cell Global ID, or E-UTRAN Cell Global Identifier (¶¶ 437–438, 467, 470) |
| Time Difference of Arrival (TDOA) | *[Dr. Kelley abandons this theory]* |
| *[All absent from KAIFI's Infringement Contentions]* | IP address of access point (¶¶ 326, 436) |
| | IP address of eNB (¶¶ 437–438) |
| | IP address of P-GW (¶ 437) |
| | IP address of S-GW (¶ 437) |
| | Radio Access Technology (RAT) (¶ 501) |
| | Tracking Area Identity (¶ 527) |
| | Tracking Area List (¶ 472) |
| | UE Local IP Address (¶¶ 437, 476) |

---

[12] In Paragraph 475, Dr. Kelley identifies an IP address assigned by the P-GW as location information. Ex. 2 ¶ 475. As stated in his rebuttal expert report, AT&T's expert, Dr. Wicker, understands this to be referring the same thing as the "PDN Address." Ex. 3 ¶ 208.

[13] The "geolocation information" Dr. Kelley identifies includes GPS coordinates. Ex. 2 ¶ 461.

| | User Location Information (¶¶ 501, 506) |
| --- | --- |
| | WLAN Identifier (¶¶ 437–438) |
| | WLAN Location Information, such as SSID and/or MAC address (¶¶ 476, 480) |
| | WLAN node ID (¶ 467) |

Dr. Kelley does not explain how KAIFI's infringement contentions put AT&T on notice of any infringement theory premised on any of these twelve newly disclosed types of information satisfying the location information limitation. *See generally* Ex. 2 ¶¶ 447–86. For example, Dr. Kelley never explains how information identifying a WLAN network, such as a Service Set Identifier (SSID) for a Wi-Fi network, has any relation to a PDN Address, GPS coordinates, or the identification of a cell tower—the only allegations of "location information" from KAIFI's infringement contentions that Dr. Kelley did not abandon. *See id.* ¶¶ 438, 440, 467, 508.

Worse, many of the alleged items of "location information" are allegedly found in Dr. Kelley's *newly identified "location registers"* for claim 1, as discussed above.[14] By way of example, Dr. Kelley alleges that the SIP Server receives and stores "the WLAN node ID, which indicates the identity (the SSID/MAC address) of the Wi-Fi access point." Ex. 2 ¶ 467. But, just as the SIP Server was not disclosed in KAIFI's infringement contentions, neither was the "WLAN node ID" that is allegedly stored by the SIP Server.

Dr. Kelley's *twelve new theories* regarding the "location information" in claims 1 and 12 should be stricken.

---

[14] As explained above, Dr. Kelley's report sets forth impermissible new theories about what network components may constitute the "location register" in claim 1—*e.g.*, that the location register may be or may be contained in the SIP Server, eNB, MME, SGW, PGW, ePDG, or SES. *See supra*, § IV.A.

## C. Dr. Kelley's Infringement Theory Regarding the Claimed "Mobile IP" in Claim 5 Should Be Stricken for Abandoning the Four Items Identified in KAIFI's Infringement Contentions.

Claim 5 the '728 Patent depends from claim 4, which requires, among other things, that "the data communication terminal informs the location register that the terminal is located indoors by registering its location into the location register using a *mobile IP*."  Dkt. 1-2 ('728 Patent), cls. 4, 5.  The only theories in KAIFI's infringement contentions as to what meets the "mobile IP" term were Dual Stack Mobile IP, Proxy Mobile IP, IPv6, and IPv4.  *See* Ex. 1 at 38 ("[t]he Accused Instrumentalities use Mobile IP, like Dual Stack and Proxy Mobile IP, IPv6, and IPv4").

Dr. Kelley entirely abandons KAIFI's infringement theories for "mobile IP," and again alleges entirely new theories for what constitutes the claimed "mobile IP" in claim 5.  Dr. Kelley does not allege any of Dual Stack Mobile IP, Proxy Mobile IP, IPv6, or IPv4 as the claimed mobile IP, and instead alleges that the claimed mobile IP may be "Session Initiation Protocol" (SIP) or "General Packet Radio Service Tunneling Protocol Version 2" (GTPv2).[15]  *See* Ex. 2 ¶¶ 619–20.

The following chart sets forth the theories for "mobile IP" in KAIFI's infringement contentions as compared to Dr. Kelley's report:

| "Mobile IP" Identified in Infringement Contentions | "Mobile IP" Identified in Kelley Report |
|---|---|
| Dual Stack Mobile IP | *[Dr. Kelley abandons this theory]* |
| Proxy Mobile IP | *[Dr. Kelley abandons this theory]* |
| IPv6 | *[Dr. Kelley abandons this theory]* |
| IPv4 | *[Dr. Kelley abandons this theory]* |
| *[Both absent from KAIFI's Infringement Contentions]* | SIP |
| | GTPv2 |

Dr. Kelley does not explain how this newly alleged "mobile IP" is evidence of KAIFI's

---

[15] Dr. Kelley also discusses "Mobility and Multihoming IKEv2" protocol (MOBIKE) in a single paragraph on this limitation without ever explicitly opining that MOBIKE is a "mobile IP." *See* Ex. 2 ¶ 624.  To the extent this represents an additional theory of the claimed "mobile IP," it was not disclosed in KAIFI's infringement contentions and should be stricken.

infringement theory based on the allegations in KAIFI's contentions.  *See* Ex. 2 ¶¶ 618–24.  For example, Dr. Kelley provides no explanation or link as to how the use of "SIP as a mobile IP" relates to the technologies identified in KAIFI's contentions.  Nor does Dr. Kelley provide any explanation or link as to how the use of GTPv2 relates to the identified technologies.  *See id.*  To the contrary, Dr. Kelley's cited materials indicate *just the opposite*.  Dr. Kelley relies upon and quotes from a paper that identifies "GTPv2" *as an entirely separate* "mobility protocol" from "Proxy Mobile IP version 6," "Mobile IP version 4," or "Dual Stack Mobile IP version 6."  *Id.* ¶ 620 (relying upon M. Olsson *et al.*, *EPC and 4G Packet Networks* (2d ed. 2013) (KAIFI_0004506)).  Accordingly, Dr. Kelley's own opinions demonstrate that his identification of SIP and GTPv2 as allegedly meeting the "mobile IP" claim limitation are new theories based on "mobility protocols" that were not disclosed in KAIFI's infringement contentions.

As such, paragraphs 618–24 of the Kelley Report, and Dr. Kelley's opinions that the claimed "mobile IP" can be anything other than Dual Stack Mobile IP, Proxy Mobile IP, IPv6, or IPv4, should be stricken from his report.

## V.    CONCLUSION

For the foregoing reasons, AT&T respectfully requests that the Court strike: (1) paragraphs 426, 446–76, and 485–86 to the extent they include opinions regarding any alleged "location register" other than the GMLC, HSS, and AAA Server; (2) any allegations regarding any alleged "location information" other than the PDN Address, APN, Subscribed QoS Profile, GPS information, CID, or TDOA; and (3) paragraphs 618–24 to the extent they include opinions regarding any "mobile IP" technology other than Dual Stack Mobile IP, Proxy Mobile IP, IPv6, or IPv4 from Dr. Kelley's expert report on infringement, as set forth above.

███████████████████████

DATED: June 16, 2020

**GIBSON, DUNN & CRUTCHER LLP**

*/s/ Neema Jalali*

Josh Krevitt
Benjamin Hershkowitz
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone: (212) 351-4000
jkrevitt@gibsondunn.com
bhershkowitz@gibsondunn.com

Neema Jalali
Anthony J. Moreno
John L. Polansky
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone: (415) 393-8200
njalali@gibsondunn.com
amoreno@gibsondunn.com
jpolansky@gibsondunn.com

Mark N. Reiter
Robert A. Vincent
Nathan R. Curtis
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Ave., Ste.  2100
Dallas, TX 75201-6912
Telephone: (214) 698-3100
mreiter@gibsondunn.com
rvincent@gibsondunn.com
ncurtis@gibsondunn.com

**THE DACUS FIRM, P.C.**
Deron R.  Dacus
821 ESE Loop 323, Suite 430
Tyler, TX 75701
Telephone: (903) 705-1117
ddacus@dacusfirm.com

*Counsel for Defendants AT&T Corp.; AT&T*
*Communications, LLC; AT&T Mobility LLC;*
*and AT&T Services, Inc.*

15

**CERTIFICATE OF SERVICE**

Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, I hereby certify that a copy of the foregoing document was filed via the Court's CM/ECF system on June 16, 2020, which will send a notification of such filing to all counsel of record.  A copy of the foregoing also was served on counsel by electronic mail on June 16, 2020.

*/s/ Neema Jalali*

**CERTIFICATE OF CONFERENCE**

Pursuant to Local Rule CV-7(h), I certify that counsel (which included Neema Jalali and Deron Dacus for AT&T and Andrew Choung and Christopher Bunt for KAIFI) met and conferred in person in Marshall, Texas on June 12, 2020, in a good faith effort to resolve all issues regarding this motion, but the parties were unable to resolve their differences and an impasse was declared.

*/s/ Neema Jalali*