# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| KAIFI LLC, <br><br>         Plaintiff, <br><br>      v. <br><br> T-MOBILE US, INC. and T-MOBILE USA, INC., <br><br>         Defendants. | CASE NO. 2:20-CV-281-JRG <br><br> JURY TRIAL DEMANDED |
| KAIFI LLC, <br><br>         Plaintiff, <br><br>      v. <br><br> VERIZON COMMUNICATIONS INC., CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS, VERIZON SERVICES CORP., VERIZON ENTERPRISE SOLUTIONS, LLC, VERIZON BUSINESS GLOBAL LLC, VERIZON BUSINESS NETWORK SERVICES, LLC, VERIZON CORPORATE SERVICES GROUP INC., VERIZON DATA SERVICES, LLC, VERIZON MEDIA INC., and VERIZON ONLINE, LLC, <br><br>         Defendants. | CASE NO. 2:20-CV-280-JRG <br><br> JURY TRIAL DEMANDED |

**LETTER OF REQUEST: REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE
PURSUANT TO THE HAGUE CONVENTION OF 18 MARCH 1970 ON
THE TAKING OF EVIDENCE ABROAD IN CIVIL OR COMMERCIAL MATTERS**

GREETINGS:

| 1. Sender | The Honorable Rodney Gilstrap United States District Court for the Eastern District of Texas |
|---|---|

|  | Sam B. Hall, Jr. Federal Building and United States Courthouse<br>100 East Houston Street<br>Marshall, Texas 75670<br>USA |
|---|---|
| 2. Central Authority of the Requested State | National Court Administration<br>Attn: Director of International Affairs<br>Seocho-daero 219<br>Seocho-gu<br>Seoul 06590<br>Republic of Korea |
| 3. Person to whom the executed request is to be returned | This Court; representatives of the parties as indicated below; the witnesses from whom evidence is requested as indicated below; and such other person(s) that you deem proper. |
| 4. Specification of the date by which the requesting authority requires receipt of the response to the Letter of Request | As soon as reasonably practicable.<br><br>Reason for urgency: The court's designated deadline for submitting documentary and testimonial evidence in this case is July 9, 2021.  Defendants  respectfully request prompt execution of this Request given the deadline above. |

       In conformity with Article 3 of the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters ("Hague Convention") and Federal Rule of Civil Procedure 28(b) and 28 U.S.C. § 1781(b), the undersigned authority respectfully has the honor to submit the following request:

| 5. | a. | Requesting Judicial Authority (Article 3, a) | The Honorable Rodney Gilstrap<br>United States District Court for the Eastern District of Texas<br>Sam B. Hall, Jr. Federal Building and United States Courthouse<br>100 East Houston Street<br>Marshall, Texas 75670<br>USA |
|---|---|---|---|
|  | b. | To the competent Authority of (Article 3, a) | Republic of Korea |
|  | c. | Name of the case and any identifying number | *KAIFI LLC v. T-Mobile US, Inc., et al.*, Case No. 2:20-cv-00281-JRG, United District Court for the Eastern District of Texas. |

| | | | |
|---|---|---|---|
| | | | *KAIFI LLC v. Verizon Communications, Inc., et al.*, Case No. 2:20-cv-00280-JRG, United States District Court for the Eastern District of Texas. |
| 6. | Names and addresses of the parties and their representative (including representatives in the requested State) (Article 3, b) | | |
| | a. | Plaintiff | KAIFI LLC ("KAIFI") |
| | Representatives | | Enoch H. Liang<br>Michael J. Song<br>Vincent M. Pollmeier<br>LTL ATTORNEYS LLP<br>300 S. Grand Ave., 14th Fl.<br>Los Angeles, California 90071<br>Telephone: (213) 612-8900<br>Facsimile: (213) 612-3773<br>Email: enoch.liang@ltlattorneys.com<br>Email: michael.song@ltlattorneys.com<br>Email: vincent.pollmeier@ltlattorneys.com<br><br>Robert Christopher Bunt<br>PARKER, BUNT & AINSWORTH PC<br>100 E. Ferguson St., Suite 418<br>Tyler, Texas 75702<br>Email: rcbunt@pbatyler.com |
| | b. | Defendants | T-Mobile US, Inc. and T-Mobile USA, Inc. (collectively, "T-Mobile"); and Verizon Communications Inc., Cellco Partnership d/b/a Verizon Wireless, Verizon Services Corp., Verizon Enterprise Solutions, LLC, Verizon Business Global LLC, Verizon Business Network Services, LLC, Verizon Corporate Services Group, Inc., Verizon Data Services, LLC, Verizon Media Inc., and Verizon Online, LLC (collectively, "Verizon," and collectively with T-Mobile, "Defendants"). |
| | Representatives | | Josh A. Krevitt<br>Benjamin Hershkowitz<br>Katherine Q. Dominguez<br>Paul J. Kremer<br>GIBSON, DUNN & CRUTCHER LLP<br>200 Park Avenue<br>New York, New York 10166-0193<br>Telephone: (212) 351-4000<br>Facsimile: (212) 351-4035<br>Email: jkrevitt@gibsondunn.com |

|  |  |  | Email: bhershkowitz@gibsondunn.com<br>Email: kdominguez@gibsondunn.com<br>Email: pkremer@gibsondunn.com<br><br>Nathan R. Curtis<br>GIBSON, DUNN & CRUTCHER LLP<br>2001 Ross Avenue<br>Dallas, Texas 75201-2923<br>Tel: (214) 698-3423<br>Fax: (214) 571-2961<br>Email: ncurtis@gibsondunn.com<br><br>Melissa R. Smith<br>GILLAM & SMITH, LLP<br>303 S. Washington Ave.<br>Marshall, TX 75670<br>Telephone:  (903) 934-8450<br>Facsimile:  (903) 934-9257<br>Email: melissa@gillamsmithlaw.com |
| 7. | a. | Nature of the proceedings (divorce, paternity, breach of contract, product liability, etc.) (Article 3, c) | This is a civil action alleging patent infringement under the patent laws of the United States.<br><br>The above-captioned cases concern the same Plaintiff and the same asserted patent, and thus the information sought in these requests is equally relevant to issues common to both litigations.  For convenience and conservation of judicial resources, counsel for T-Mobile and Verizon have therefore coordinated to file this single, consolidated set of requests under the Hague Convention applicable to both cases. |
|  | b. | Summary of complaint | The complaint alleges that T-Mobile infringes U.S. Patent No. 6,922,728 (the "728 patent") by making, using, selling, offering to sell, and/or importing certain wireless/cellular instrumentalities.  KAIFI alleges it is entitled to damages constituting, in part, a reasonable royalty on a license for the 728 patent.  KAIFI also alleges it is entitled to an injunction preventing T-Mobile's alleged continuing infringement of the 728 patent.  KAIST is the original assignee named on the face of the 728 patent.  The 728 patent was then |

| | | | allegedly assigned to Intellectual Discovery Co., Ltd., and then to KAIFI.<br><br>The complaint alleges that Verizon infringes U.S. Patent No. 6,922,728 (the "728 patent") by making, using, selling, offering to sell, and/or importing certain wireless/cellular instrumentalities.  KAIFI alleges it is entitled to damages constituting, in part, a reasonable royalty on a license for the 728 patent.  KAIFI also alleges it is entitled to an injunction preventing Verizon's alleged continuing infringement of the 728 patent.  KAIST is the original assignee named on the face of the 728 patent.  The 728 patent was then allegedly assigned to Intellectual Discovery Co., Ltd., and then to KAIFI. |
| | c. | Summary of defenses | In defense against KAIFI's claims of patent infringement, T-Mobile asserts, inter alia, that it does not infringe any of the claims of the 728 patent.  T-Mobile also asserts that KAIFI cannot enforce the 728 patent because it does not own all right, title, and interest in that patent; and that the 728 patent is unenforceable because it does not properly list all inventors.  T-Mobile further asserts that the claims of the 728 patent are invalid under at least 35 U.S.C. §§ 102, 103, and 112; are ineligible for patent protection under 35 U.S.C. § 101; and are unenforceable under equitable doctrines that include, but are not limited to, estoppel, unclean hands, waiver, and implied waiver.<br><br>In defense against KAIFI's claims of patent infringement, Verizon asserts, inter alia, that it does not infringe any of the claims of the 728 patent.  Verizon also asserts that KAIFI cannot enforce the 728 patent because it does not own all right, title, and interest in that patent; and that the 728 patent is unenforceable because it does not properly list all inventors.  Verizon further asserts that the claims of the 728 patent are invalid under at least 35 U.S.C. §§ 102, 103, and 112; are ineligible for patent protection under 35 |

| | | | U.S.C. § 101; and are unenforceable under equitable doctrines that include, but are not limited to, estoppel, unclean hands, waiver, and implied waiver.  Finally, Verizon asserts that the KAIFI's claims for damages are statutorily limited under at least 35 U.S.C. §§ 286 and 287; that KAIFI is barred from recovering costs under 35 U.S.C. § 288; and that claims for relief are limited under the doctrines of full compensation, exhaustion, and/or first sale.<br><br>KAIST has knowledge and information relevant to Defendants' defenses, including Defendants' contentions that the 728 patent is invalid under United States patent law. |
|---|---|---|---|
| | d. | Other necessary information or documents | KAIST's current address is:<br><br>Korea Advanced Institute of Science & Technology<br>373-1, Kusong-Dong<br>Yusong-Gu<br>Daejon 305-701<br>Republic of Korea |
| 8. | a. | Evidence to be obtained or other judicial act to be performed (Article 3, d) | Oral testimony of the designated witnesses relating to questions in Attachment A.<br><br>As the original assignee named on the face of the 728 patent, KAIST possesses information relevant to Defendants' defenses to the complaint's allegations of infringement of the 728 patent and other aspects of the underlying case, including but not limited to Defendants' invalidity defense, KAIFI's claim for damages, and documents relating to the alleged invention(s) of the 728 patent.  For example, KAIST possesses knowledge relating to the alleged invention and patenting of the 728 patent (including prior art); ownership of the 728 patent; licensing of the 728 patent and related or comparable patents; valuation of the 728 patent and related or comparable patents; and settlements, licenses, or other financial interests in the 728 patent. The evidence sought is directly relevant to the issues in dispute. |

| | | | |
|---|---|---|---|
| | | | Defendants have no recourse to seek this information other than to enlist the aid of this Authority through the Hague Convention. |
| | b. | Purpose of the evidence or judicial act sought | The evidence sought is directly relevant to the issues in dispute.  In particular, Defendants seek testimony regarding the witness examination questions listed in Attachment A.  The relevance of each question is explained below: |

1. KAIST is the original assignee named on the face of U.S. Patent No. 6,922,728 (the "728 patent") (*see* KAIFI LLC's Complaint, Dkt. No. 1, ¶ 25) and the location where the 728 patent was purportedly developed (and the employer of Dong-Ho Cho ("the Named Inventor")) (*see* KAIFI LLC's Complaint, Dkt. No. 1, ¶ 28, stating that Dong-Ho Cho "is currently a professor of electrical engineering at KAIST" and "has been the Dean of the College of Information Science & Technology at KAIST [and] served as the director of KAIST's Wireless Power Transfer Technology Research Center").  KAIST's patent-related activities are managed by KAIST's Intellectual Property and Technology Transfer Center ("KAIST IPTC").  As employees of KAIST IPTC, the witnesses possess knowledge of their employment and job duties and responsibilities.  This information is relevant at least to Defendants' invalidity and damages defenses.

2. KAIST is the original assignee named on the face of the 728 patent (*see* KAIFI LLC's Complaint, Dkt. No. 1, ¶ 25) and the location where the 728 patent was purportedly developed (and the employer of the Named Inventor) (*see* KAIFI LLC's Complaint, Dkt. No. 1, ¶ 28, stating that Dong-Ho Cho "is currently a professor of electrical engineering at KAIST" and "has been the Dean of the

College of Information Science & Technology at KAIST [and] served as the director of KAIST's Wireless Power Transfer Technology Research Center"). KAIST's patent-related activities are managed by KAIST IPTC.  As employees of KAIST IPTC, the witnesses would possess knowledge and awareness of certain references pertinent to the prosecution of the 728 patent.  This information is relevant at least to Defendants' invalidity defenses.

3. KAIST was the original assignee named on the face of the 728 patent (*see* KAIFI LLC's Complaint, Dkt. No. 1, ¶ 25) and held the assignment for approximately 13 years (according to records of the United States Patent and Trademark Office ("USPTO")), before the 728 patent was reassigned to Intellectual Discovery Co., Ltd. ("Intellectual Discovery") (according to USPTO records).  KAIST's patent-related activities are managed by KAIST IPTC.  As employees of KAIST IPTC, the witnesses would possess knowledge relating to the public use, commercialization, license, sale, assignment, ownership, valuation and the like concerning the 728 patent or portfolio of patents containing the 728 patent.  This information is relevant at least to Defendants' damages defenses.

4. KAIST was the original assignee named on the face of the 728 patent (*see* KAIFI LLC's Complaint, Dkt. No. 1, ¶ 25) and held the assignment for approximately 13 years before the 728 patent was reassigned to Intellectual Discovery (according to USPTO records).  KAIST's patent-related activities are managed by KAIST IPTC.  As employees of KAIST IPTC, the witnesses would possess knowledge relating to revenues, compensation, consideration, costs, expenses, and profits generated, received, or to be received in connection with

|  |  |  | KAIST's ownership of the 728 patent. This information is relevant at least to Defendants' damages defenses.<br><br>5. KAIST was the original assignee named on the face of the 728 patent (*see* KAIFI LLC's Complaint, Dkt. No. 1, ¶ 25) and held the assignment for approximately 13 years before the 728 patent was reassigned to Intellectual Discovery (according to USPTO records).  KAIST's patent-related activities are managed by KAIST IPTC.  As employees of KAIST IPTC, the witnesses would possess knowledge concerning KAIST's efforts to enforce the 728 patent, including the infringement analysis report or its equivalent generated in connection of the assignment of the 728 patent to Intellectual Discovery.  This information is relevant at least to Defendants' invalidity and damages defenses.<br><br>6. KAIST is a purported teaching and research institution and the original assignee named on the face of the 728 patent (*see* KAIFI LLC's Complaint, Dkt. No. 1, ¶ 25) and the location where the 728 patent was purportedly developed (and the employer of the Named Inventor) (*see* KAIFI LLC's Complaint, Dkt. No. 1, ¶ 28, stating that Dong-Ho Cho "is currently a professor of electrical engineering at KAIST" and "has been the Dean of the College of Information Science & Technology at KAIST [and] served as the director of KAIST's Wireless Power Transfer Technology Research Center").  KAIST's patent-related activities are managed by KAIST IPTC.  As employees of KAIST IPTC, the witnesses would possess presentations, lecture notes, and course syllabi allegedly relating to the technology claimed in the alleged invention(s) of the 728 patent.  This information is relevant at least to |

Defendants' invalidity and damages defenses.

7. KAIST was the original assignee named on the face of the 728 patent (*see* KAIFI LLC's Complaint, Dkt. No. 1, ¶ 25) and held the assignment for approximately 13 years before the 728 patent was reassigned to Intellectual Discovery (according to USPTO records).  KAIST was also the employer of the Named Inventor (*see* KAIFI LLC's Complaint, Dkt. No. 1, ¶ 28, stating that Dong-Ho Cho "is currently a professor of electrical engineering at KAIST" and "has been the Dean of the College of Information Science & Technology at KAIST [and] served as the director of KAIST's Wireless Power Transfer Technology Research Center").  Intellectual Discovery held the assignment for nearly four years, according to USPTO records.  Then, Intellectual Discovery purportedly assigned the 728 patent to KAIFI LLC (USPTO records).  KAIST's patent-related activities are managed by KAIST IPTC.  As employees of KAIST IPTC, the witnesses would possess knowledge concerning employee policies and procedures, employment agreements, assignment agreements, and royalty agreements.  This information is relevant at least to Defendants' damages defenses.

8. KAIST was the original assignee named on the face of the 728 patent (*see* KAIFI LLC's Complaint, Dkt. No. 1, ¶ 25) and held the assignment for approximately 13 years before the 728 patent was reassigned to Intellectual Discovery (according to USPTO records).  KAIST's patent-related activities are managed by KAIST IPTC.  As employees of KAIST IPTC, the witnesses would possess policies and practices concerning patent licensing or commercialization.  This information is relevant at least to Defendants' damages defenses.

9. KAIST was the original assignee named on the face of the 728 patent (*see* KAIFI LLC's Complaint, Dkt. No. 1, ¶ 25) and held the assignment for approximately 13 years before the 728 patent was reassigned to Intellectual Discovery (according to USPTO records).  KAIST's ownership, management, and organizational structure are relevant at least to Defendants' enforceability and damages defenses.  As employees of KAIST IPTC, the witnesses would possess this knowledge.

10. KAIST was the original assignee named on the face of the 728 patent (*see* KAIFI LLC's Complaint, Dkt. No. 1, ¶ 25) and held the assignment for approximately 13 years before the 728 patent was reassigned to Intellectual Discovery (according to USPTO records).  KAIST's past and present electronic data and document maintenance and retention procedures and policies are relevant at least to Defendants' invalidity and damages defenses.  As employees of KAIST IPTC, the witnesses would possess this knowledge.

11. (For witness Sung-Chul Shin only): KAIST was the location where the 728 patent was purportedly developed, was the employer of the Named Inventor (*see* KAIFI LLC's Complaint, Dkt. No. 1, ¶ 28, stating that Dong-Ho Cho "is currently a professor of electrical engineering at KAIST" and "has been the Dean of the College of Information Science & Technology at KAIST [and] served as the director of KAIST's Wireless Power Transfer Technology Research Center"), and was the original assignee named on the face of the 728 patent (*see* KAIFI LLC's Complaint, Dkt. No. 1, ¶ 25).  Also, KAIST held the assignment for approximately 13 years (according to USPTO records). According to public records, KAIST

| | | | |
|---|---|---|---|
| | | | performed an investigation of the Named Inventor relating to the Named Inventor's participation in what have been described as fake academic conferences, including OMICS (*see, e.g.*, the following online news article: https://www.hankookilbo.com/News/Read/201910101608378144?did=NA&dtype=&dtypecode=&prnewsid).  Also according to public records, Sung-Chul Shin attended and spoke at the inspection meeting relating to the Named Inventor's participation in what have been described as fake academic conferences, including OMICS. Thus, Sung-Chul Shin would possess knowledge relating to the investigation of the Named Inventor's participation in such conferences. This information is relevant at least to Defendants' enforceability and damages defenses. |
| 9. | Identity and address of any person to be examined (Article 3, e) | | Kim Kwon<br>KAIST Intellectual Property and Technology Transfer Center<br>Industrial Property Rights Management<br>193 Munji-ro<br>Yuseong-gu<br>Daejeon 34051<br>Republic of Korea<br><br>Park Ho Cheul<br>KAIST Dogok Campus (4th Floor, Office #410-11)<br>25, Nonhyeon-ro 28-gil<br>Gangnam-gu<br>Seoul 06301<br>Republic of Korea<br><br>Kim Hee Tae<br>KAIST Intellectual Property and Technology Transfer Center<br>Technology Transfer<br>193 Munji-ro<br>Yuseong-gu<br>Daejeon 34051<br>Republic of Korea |

| | | Seo Moon Jong<br>KAIST Intellectual Property and Technology Transfer Center<br>Technology Transfer Marketing<br>193 Munji-ro<br>Yuseong-gu<br>Daejeon 34051<br>Republic of Korea<br><br>Choi Bong Geun<br>KAIST Intellectual Property and Technology Transfer Center<br>Technology Transfer Post Management<br>193 Munji-ro<br>Yuseong-gu<br>Daejeon 34051<br>Republic of Korea<br><br>Sung-Chul Shin<br>President<br>Korea Advanced Institute of Science & Technology<br>291 Daehak-ro,<br>Yusong-Gu<br>Daejon 34141<br>Republic of Korea |
|---|---|---|
| 10. | Questions to be put to the persons to be examined or statement of the subject matter about which they are to be examined (Article 3, f) | *See* Attachment A (Witness Examination Questionnaire) |
| 11. | Documents or other property to be inspected (Article 3, g) | None. |
| 12. | Any requirement that the evidence be given on oath or affirmation and any special form to be used (Article 3, h) | The witness(es) should be examined under oath. |
| 13. | Special methods or procedure to be followed (e.g., oral or in writing, verbatim, transcript or summary, cross-examination, etc.) (Article 3, i) and 9) | This Letter of Request includes the following requests:<br>· That this Letter of Request be granted and that evidence-taking proceeding(s) be performed on an expedited basis;<br>· That an authorized shorthand writer/court reporter be present at the examination who shall record the oral testimony verbatim (in Korean) and prepare a transcript of the evidence; |

13

|   |   |   |
|---|---|---|
|   |   | · That a direct examination / re-direct examination by Defendants' Korean counsel be allowed under Korean Civil Procedure;<br>· That simultaneous interpretation (e.g., whispering translation) by an interpreter for either party or counsel be permitted at the party's expense;<br>· That Defendants' Korean counsel be permitted to ask the witness(es) additional questions that are related to the subject matter set forth in Attachment A;<br>· That KAIFI's counsel be permitted to ask the witness(es) additional questions that are related to the subject matter set forth in Attachment A; and<br>· That audio recording of the witness testimony be provided in electronic form to This Court and representatives of the parties as indicated above.<br><br>In the event the evidence cannot be taken in the manner or location requested, it is to be taken in such a manner or location as provided by local law. To the extent any request in this section is deemed incompatible with Korean principles of procedural law, it is to be disregarded. |
| 14. | Request for notification of the time and place for the execution of the Request and identity and address of any person to be notified (Article 7) | This Court respectfully requests that you notify this Court; the representatives of the parties as indicated above; the witness from whom evidence is requested as indicated above; such person(s) that you deem proper; and the attorney named below:<br><br>Seong-Soo Park<br>Kim & Chang<br>75, Saemunan-ro (Crescendo Building), Jongno-gu, Seoul, 03182, Korea<br>Tel: +82-2-3703-1870<br>seongsoo.park@kimchang.com |
| 15. | Request for attendance or participation of judicial personnel of the requesting authority at the execution of the Letter of Request (Article 8) | No judicial personnel of the requesting authority will attend or participate. |

| 16. | Specification of privilege or duty to refuse to give evidence under the law of the State of origin (Article 11, b) | Defendants believe that KAIST does not benefit from any privilege, and does not endorse the assertion of any such privilege or duty. |
| 17. | The fees and costs incurred which are reimbursable under the second paragraph of Article 14 or under Article 26 of the Convention will be borne by: | Defendants will bear the reimbursable costs associated with this request in accordance with the provisions of the Hague Convention. Please contact Defendants' counsel at the addresses set out under paragraph 6.b above, to make any necessary financial arrangements. |

DATE OF REQUEST                           _____ 2021

_____

The Honorable Rodney Gilstrap
United States District Judge
United States District Court for the Eastern District
of Texas, Marshall Division
Sam B. Hall Jr. Federal Building and United States
Courthouse
100 East Houston Street
Marshall, Texas 75670
United States of America
(signature and seal)

# ATTACHMENT A

## INSTRUCTIONS

1.    In responding to the examination questions below, please respond with all information that is available to you.

2.    Any information provided by you will be treated according to the Protective Order in this case.  If requested, the Protective Order will be provided to you separately.

## WITNESS EXAMINATION QUESTIONNAIRE: Kim Kwon

1.    How long have you been employed by KAIST and/or KAIST IPTC?

2.    What are your job duties and responsibilities in Business Property Rights Management (or your current job duties and responsibilities if you have moved to a different group)?

3.    What are your job duties and responsibilities in your role overseeing all of KAIST's patents?

4.    Please describe your past employment with KAIST and/or KAIST IPTC, including your job duties and responsibilities in each former role.

5.    Please describe KAIST's knowledge or awareness, and the circumstances under which KAIST became aware, of any of the following references:

   a.    N. Nikolaou, et al., Wireless Technologies Convergence: Results and Experience (2000).

   b.    K. Pahlavan, et al., Handoff in Hybrid Mobile Data Networks (2000).

   c.    U.S. Patent No. 7,039,027, or any related patents, foreign counterparts, or provisional applications to which it claims priority.

   d.    U.S. Patent No. 6,243,581, or any related patents, foreign counterparts, or provisional applications to which it claims priority.

6.    Please describe the assignment of U.S. Patent No. 6,922,728 to Intellectual Discovery Co.,

Ltd.

7.      Please describe any public use, commercialization, purchase, sale, or offer for sale of the alleged inventions of U.S. Patent No. 6,922,728 or Korean Patent No. 10-0386092.

8.      Please describe any license, offer for license, covenant not to sue, or settlement of or concerning U.S. Patent No. 6,922,728, Korean Patent No. 10-0386092, or of any portfolio of patents containing U.S. Patent No. 6,922,728 or Korean Patent No. 10-0386092.

9.      Please describe any valuation prepared of U.S. Patent No. 6,922,728, Korean Patent No. 10-0386092, or of any portfolio of patents containing U.S. Patent No. 6,922,728 or Korean Patent No. 10-0386092.

10.     Please explain revenues, compensation, consideration, costs, expenses, and profits (including gross and net profits) generated, received, and/or to be received in connection with U.S. Patent No. 6,922,728 and/or Korean Patent No. 10-0386092.

11.     Please explain the methodology used to calculate or otherwise determine revenues, compensation, costs, expenses, profits, and/or value of being able to switch automatically and without interruption between "indoor" and "outdoor" networks as those terms are used in U.S. Patent No. 6,922,728 (*see* U.S. Patent No. 6,922,728, Abstract).

12.     Please explain revenues, compensation, consideration, costs, expenses, and profits (including gross and net profits) generated, received, and/or to be received by KAIST (or its employees, agents, parents, or subsidiaries) in connection with the cases brought by KAIFI LLC against T-Mobile in the United States District Court for the Eastern District of Texas, Case No. 2:20-cv-00281-JRG and KAIFI LLC against Verizon in the United States District Court for the Eastern District of Texas, Case No. 2:20-cv-00280-JRG.

13. Please describe your enforcement and/or preparation for enforcement of U.S. Patent No. 6,922,728, including analyses of infringement (*e.g.*, the infringement analysis report or its equivalent generated in connection with the assignment of U.S. Patent No. 6,922,728 to Intellectual Discovery Co., Ltd.), non-infringement, validity, invalidity, enforceability, or unenforceability of U.S. Patent No. 6,922,728.

14. Please describe presentations, lecture notes, and course syllabi for courses offered by KAIST (or its employees, agents, parents, or subsidiaries, if any) relating to technology for switching or handover between "indoor" and "outdoor" networks as those terms are used in U.S. Patent No. 6,922,728 (*see* U.S. Patent No. 6,922,728, Abstract) from December 1996 to present.

15. Please explain KAIST's relationship with or agreements or draft agreements (including employee policies and procedures, employment agreements, work-for-hire agreements, assignment agreements, licensing agreements, IP-ownership agreements, royalty agreements, or other agreements) between KAIST (and its employees, agents, parents, or subsidiaries) and Dong-Ho Cho, Intellectual Discovery Co., Ltd., KAIFI LLC, or any other current or former owner of U.S. Patent No. 6,922,728 or Korean Patent No. 10-0386092, from December 1996 to present.

16. Please explain the policies and practices in place at KAIST concerning patent licensing or commercialization, dating back to December 1996, including:

   a. written licensing policies or best practices;

   b. the economic and technical factors considered in drafting and entering into license, royalty, or settlement agreements;

   c. standard or preferred terms for license agreements;

d.      the process by which KAIST (or its employees, agents, parents, or subsidiaries) determines the nature, scope and terms of license agreements in which it is a licensor; and

e.      circumstances in which KAIST has deviated from such policies.

17.    Please describe the ownership, management, and organizational structure of KAIST, including the past and present relationship with Dong-Ho Cho.

18.    Please describe the present and past electronic data and document maintenance and retention procedures and policies in place at KAIST, dating back to December 1996.

### WITNESS EXAMINATION QUESTIONNAIRE: Park Ho Cheul

1.    How long have you been employed by KAIST and/or KAIST IPTC?

2.    What are your job duties and responsibilities in Business Property Rights Management (or your current job duties and responsibilities if you have moved to a different group)?

3.    What are your job duties and responsibilities in your role overseeing all of KAIST's patents?

4.    Please describe your past employment with KAIST and/or KAIST IPTC, including your job duties and responsibilities in each former role.

5.    Please describe KAIST's knowledge or awareness, and the circumstances under which KAIST became aware, of any of the following references:

a.      N. Nikolaou, et al., Wireless Technologies Convergence: Results and Experience (2000).

b.      K. Pahlavan, et al., Handoff in Hybrid Mobile Data Networks (2000).

c.      U.S. Patent No. 7,039,027, or any related patents, foreign counterparts, or provisional applications to which it claims priority.

      d.     U.S. Patent No. 6,243,581, or any related patents, foreign counterparts, or provisional applications to which it claims priority.

6.     Please describe the assignment of U.S. Patent No. 6,922,728 to Intellectual Discovery Co., Ltd.

7.     Please describe any public use, commercialization, purchase, sale, or offer for sale of the alleged inventions of U.S. Patent No. 6,922,728 or Korean Patent No. 10-0386092.

8.     Please describe any license, offer for license, covenant not to sue, or settlement of or concerning U.S. Patent No. 6,922,728, Korean Patent No. 10-0386092, or of any portfolio of patents containing U.S. Patent No. 6,922,728 or Korean Patent No. 10-0386092.

9.     Please describe any valuation prepared of U.S. Patent No. 6,922,728, Korean Patent No. 10-0386092, or of any portfolio of patents containing U.S. Patent No. 6,922,728 or Korean Patent No. 10-0386092.

10.     Please explain revenues, compensation, consideration, costs, expenses, and profits (including gross and net profits) generated, received, and/or to be received in connection with U.S. Patent No. 6,922,728 or Korean Patent No. 10-0386092.

11.     Please explain the methodology used to calculate or otherwise determine revenues, compensation, costs, expenses, profits, and/or value of being able to switch automatically and without interruption between "indoor" and "outdoor" networks as those terms are used in U.S. Patent No. 6,922,728 (*see* U.S. Patent No. 6,922,728, Abstract).

12.     Please explain revenues, compensation, consideration, costs, expenses, and profits (including gross and net profits) generated, received, and/or to be received by KAIST (or its employees, agents, parents, or subsidiaries) in connection with the case brought by KAIFI LLC against T-Mobile in the United States District Court for the Eastern District of

Texas, Case No. 2:20-cv-00281-JRG and KAIFI LLC against Verizon in the United States District Court for the Eastern District of Texas, Case No. 2:20-cv-00280-JRG.

13.   Please describe your enforcement and/or preparation for enforcement of U.S. Patent No. 6,922,728, including analyses of infringement (*e.g.*, the infringement analysis report or its equivalent generated in connection with the assignment of U.S. Patent No. 6,922,728 to Intellectual Discovery Co., Ltd.), non-infringement, validity, invalidity, enforceability, or unenforceability of U.S. Patent No. 6,922,728.

14.   Please describe presentations, lecture notes, and course syllabi for courses offered by KAIST (or its employees, agents, parents, or subsidiaries, if any) relating to technology for switching or handover between "indoor" and "outdoor" networks as those terms are used in U.S. Patent No. 6,922,728 (*see* U.S. Patent No. 6,922,728, Abstract) from December 1996 to present.

15.   Please explain KAIST's relationship with or agreements or draft agreements (including employee policies and procedures, employment agreements, work-for-hire agreements, assignment agreements, licensing agreements, IP-ownership agreements, royalty agreements, or other agreements) between KAIST (and its employees, agents, parents, or subsidiaries) and Dong-Ho Cho, Intellectual Discovery Co., Ltd., KAIFI LLC, or any other current or former owner of U.S. Patent No. 6,922,728 or Korean Patent No. 10-0386092, from December 1996 to present.

16.   Please explain the policies and practices in place at KAIST concerning patent licensing or commercialization, dating back to December 1996, including:

a.      written licensing policies or best practices;

    b.       the economic and technical factors considered in drafting and entering into license, royalty, or settlement agreements;

    c.       standard or preferred terms for license agreements;

    d.       the process by which KAIST (or its employees, agents, parents, or subsidiaries) determines the nature, scope and terms of license agreements in which it is a licensor; and

    e.       circumstances in which KAIST has deviated from such policies.

17. Please describe the ownership, management, and organizational structure of KAIST, including the past and present relationship with Dong-Ho Cho.

18. Please describe the present and past electronic data and document maintenance and retention procedures and policies in place at KAIST, dating back to December 1996.

## WITNESS EXAMINATION QUESTIONNAIRE: Kim Hee Tae

1. How long have you been employed by KAIST and/or KAIST IPTC?

2. What are your job duties and responsibilities in Technology Marketing and Transfer (or your current job duties and responsibilities if you have moved to a different group)?

3. What are your job duties and responsibilities in your role overseeing all of KAIST's patents?

4. Please describe your past employment with KAIST and/or KAIST IPTC, including your job duties and responsibilities in each former role.

5. Please describe KAIST's knowledge or awareness, and the circumstances under which KAIST became aware, of any of the following references:

    a.       N. Nikolaou, et al., Wireless Technologies Convergence: Results and Experience (2000).

b.      K. Pahlavan, et al., Handoff in Hybrid Mobile Data Networks (2000).

c.      U.S. Patent No. 7,039,027, or any related patents, foreign counterparts, or provisional applications to which it claims priority.

d.      U.S. Patent No. 6,243,581, or any related patents, foreign counterparts, or provisional applications to which it claims priority.

6.      Please describe the assignment of U.S. Patent No. 6,922,728 to Intellectual Discovery Co., Ltd.

7.      Please describe any public use, commercialization, purchase, sale, or offer for sale of the alleged inventions of U.S. Patent No. 6,922,728 or Korean Patent No. 10-0386092.

8.      Please describe any license, offer for license, covenant not to sue, or settlement of or concerning U.S. Patent No. 6,922,728, Korean Patent No. 10-0386092, or of any portfolio of patents containing U.S. Patent No. 6,922,728 or Korean Patent No. 10-0386092.

9.      Please describe any valuation prepared of U.S. Patent No. 6,922,728, Korean Patent No. 10-0386092, or of any portfolio of patents containing U.S. Patent No. 6,922,728 or Korean Patent No. 10-0386092.

10.     Please explain revenues, compensation, consideration, costs, expenses, and profits (including gross and net profits) generated, received, and/or to be received in connection with U.S. Patent No. 6,922,728 or Korean Patent No. 10-0386092.

11.     Please explain the methodology used to calculate or otherwise determine revenues, compensation, costs, expenses, profits, and/or value of being able to switch automatically and without interruption between "indoor" and "outdoor" networks as those terms are used in U.S. Patent No. 6,922,728 (*see* U.S. Patent No. 6,922,728, Abstract).

12.     Please explain revenues, compensation, consideration, costs, expenses, and profits

(including gross and net profits) generated, received, and/or to be received by KAIST (or its employees, agents, parents, or subsidiaries) in connection with the case brought by KAIFI LLC against T-Mobile in the United States District Court for the Eastern District of Texas, Case No. 2:20-cv-00281-JRG and KAIFI LLC against Verizon in the United States District Court for the Eastern District of Texas, Case No. 2:20-cv-00280-JRG.

13. Please describe your enforcement and/or preparation for enforcement of U.S. Patent No. 6,922,728, including analyses of infringement (*e.g.*, the infringement analysis report or its equivalent generated in connection with the assignment of U.S. Patent No. 6,922,728 to Intellectual Discovery Co., Ltd.), non-infringement, validity, invalidity, enforceability, or unenforceability of U.S. Patent No. 6,922,728.

14. Please describe presentations, lecture notes, and course syllabi for courses offered by KAIST (or its employees, agents, parents, or subsidiaries, if any) relating to technology for switching or handover between "indoor" and "outdoor" networks as those terms are used in U.S. Patent No. 6,922,728 (*see* U.S. Patent No. 6,922,728, Abstract) from December 1996 to present.

15. Please explain KAIST's relationship with or agreements or draft agreements (including employee policies and procedures, employment agreements, work-for-hire agreements, assignment agreements, licensing agreements, IP-ownership agreements, royalty agreements, or other agreements) between KAIST (and its employees, agents, parents, or subsidiaries) and Dong-Ho Cho, Intellectual Discovery Co., Ltd., KAIFI LLC, or any other current or former owner of U.S. Patent No. 6,922,728 or Korean Patent No. 10-0386092, from December 1996 to present.

16.   Please explain the policies and practices in place at KAIST concerning patent licensing or commercialization, dating back to December 1996, including:

    a.   written licensing policies or best practices;

    b.   the economic and technical factors considered in drafting and entering into license, royalty, or settlement agreements;

    c.   standard or preferred terms for license agreements;

    d.   the process by which KAIST (or its employees, agents, parents, or subsidiaries) determines the nature, scope and terms of license agreements in which it is a licensor; and

    e.   circumstances in which KAIST has deviated from such policies.

17.   Please describe the ownership, management, and organizational structure of KAIST, including the past and present relationship with Dong-Ho Cho.

18.   Please describe the present and past electronic data and document maintenance and retention procedures and policies in place at KAIST, dating back to December 1996.

### WITNESS EXAMINATION QUESTIONNAIRE: Seo Moon Jong

1.   How long have you been employed by KAIST and/or KAIST IPTC?

2.   What are your job duties and responsibilities in Business Property Rights Management (or your current job duties and responsibilities if you have moved to a different group)?

3.   What are your job duties and responsibilities in your role overseeing all of KAIST's patents?

4.   Please describe your past employment with KAIST and/or KAIST IPTC, including your job duties and responsibilities in each former role.

5.     Please describe KAIST's knowledge or awareness, and the circumstances under which KAIST became aware, of any of the following references:

    a.     N. Nikolaou, et al., Wireless Technologies Convergence: Results and Experience (2000).

    b.     K. Pahlavan, et al., Handoff in Hybrid Mobile Data Networks (2000).

    c.     U.S. Patent No. 7,039,027, or any related patents, foreign counterparts, or provisional applications to which it claims priority.

    d.     U.S. Patent No. 6,243,581, or any related patents, foreign counterparts, or provisional applications to which it claims priority.

6.     Please describe the assignment of U.S. Patent No. 6,922,728 to Intellectual Discovery Co., Ltd.

7.     Please describe any public use, commercialization, purchase, sale, or offer for sale of the alleged inventions of U.S. Patent No. 6,922,728 or Korean Patent No. 10-0386092.

8.     Please describe any license, offer for license, covenant not to sue, or settlement of or concerning U.S. Patent No. 6,922,728, Korean Patent No. 10-0386092, or of any portfolio of patents containing U.S. Patent No. 6,922,728 or Korean Patent No. 10-0386092.

9.     Please describe any valuation prepared of U.S. Patent No. 6,922,728, Korean Patent No. 10-0386092, or of any portfolio of patents containing U.S. Patent No. 6,922,728 or Korean Patent No. 10-0386092.

10.     Please explain revenues, compensation, consideration, costs, expenses, and profits (including gross and net profits) generated, received, and/or to be received in connection with U.S. Patent No. 6,922,728 or Korean Patent No. 10-0386092.

11.     Please explain the methodology used to calculate or otherwise determine revenues,

compensation, costs, expenses, profits, and/or value of being able to switch automatically and without interruption between "indoor" and "outdoor" networks as those terms are used in U.S. Patent No. 6,922,728 (*see* U.S. Patent No. 6,922,728, Abstract).

12. Please explain revenues, compensation, consideration, costs, expenses, and profits (including gross and net profits) generated, received, and/or to be received by KAIST (or its employees, agents, parents, or subsidiaries) in connection with the case brought by KAIFI LLC against T-Mobile in the United States District Court for the Eastern District of Texas, Case No. 2:20-cv-00281-JRG and KAIFI LLC against Verizon in the United States District Court for the Eastern District of Texas, Case No. 2:20-cv-00280-JRG.

13. Please describe your enforcement and/or preparation for enforcement of U.S. Patent No. 6,922,728, including analyses of infringement (*e.g.*, the infringement analysis report or its equivalent generated in connection with the assignment of U.S. Patent No. 6,922,728 to Intellectual Discovery Co., Ltd.), non-infringement, validity, invalidity, enforceability, or unenforceability of U.S. Patent No. 6,922,728.

14. Please describe presentations, lecture notes, and course syllabi for courses offered by KAIST (or its employees, agents, parents, or subsidiaries, if any) relating to technology for switching or handover between "indoor" and "outdoor" networks as those terms are used in U.S. Patent No. 6,922,728 (*see* U.S. Patent No. 6,922,728, Abstract) from December 1996 to present.

15. Please explain KAIST's relationship with or agreements or draft agreements (including employee policies and procedures, employment agreements, work-for-hire agreements, assignment agreements, licensing agreements, IP-ownership agreements, royalty agreements, or other agreements) between KAIST (and its employees, agents, parents, or

subsidiaries) and Dong-Ho Cho, Intellectual Discovery Co., Ltd., KAIFI LLC, or any other current or former owner of U.S. Patent No. 6,922,728 or Korean Patent No. 10-0386092, from December 1996 to present.

16.   Please explain the policies and practices in place at KAIST concerning patent licensing or commercialization, dating back to December 1996, including:

    a.   written licensing policies or best practices;

    b.   the economic and technical factors considered in drafting and entering into license, royalty, or settlement agreements;

    c.   standard or preferred terms for license agreements;

    d.   the process by which KAIST (or its employees, agents, parents, or subsidiaries) determines the nature, scope and terms of license agreements in which it is a licensor; and

    e.   circumstances in which KAIST has deviated from such policies.

17.   Please describe the ownership, management, and organizational structure of KAIST, including the past and present relationship with Dong-Ho Cho.

18.   Please describe the present and past electronic data and document maintenance and retention procedures and policies in place at KAIST, dating back to December 1996.

**<u>WITNESS EXAMINATION QUESTIONNAIRE: Choi Bong Geun</u>**

1.   How long have you been employed by KAIST and/or KAIST IPTC?

2.   What are your job duties and responsibilities in Business Property Rights Management (or your current job duties and responsibilities if you have moved to a different group)?

3.   What are your job duties and responsibilities in your role overseeing all of KAIST's patents?

4.      Please describe your past employment with KAIST and/or KAIST IPTC, including your job duties and responsibilities in each former role.

5.      Please describe KAIST's knowledge or awareness, and the circumstances under which KAIST became aware, of any of the following references:

     a.      N. Nikolaou, et al., Wireless Technologies Convergence: Results and Experience (2000).

     b.      K. Pahlavan, et al., Handoff in Hybrid Mobile Data Networks (2000).

     c.      U.S. Patent No. 7,039,027, or any related patents, foreign counterparts, or provisional applications to which it claims priority.

     d.      U.S. Patent No. 6,243,581, or any related patents, foreign counterparts, or provisional applications to which it claims priority.

6.      Please describe the assignment of U.S. Patent No. 6,922,728 to Intellectual Discovery Co., Ltd.

7.      Please describe any public use, commercialization, purchase, sale, or offer for sale of the alleged inventions of U.S. Patent No. 6,922,728 or Korean Patent No. 10-0386092.

8.      Please describe any license, offer for license, covenant not to sue, or settlement of or concerning U.S. Patent No. 6,922,728, Korean Patent No. 10-0386092, or of any portfolio of patents containing U.S. Patent No. 6,922,728 or Korean Patent No. 10-0386092.

9.      Please describe any valuation prepared of U.S. Patent No. 6,922,728, Korean Patent No. 10-0386092, or of any portfolio of patents containing U.S. Patent No. 6,922,728 or Korean Patent No. 10-0386092.

10.     Please explain revenues, compensation, consideration, costs, expenses, and profits (including gross and net profits) generated, received, and/or to be received in connection

with U.S. Patent No. 6,922,728 or Korean Patent No. 10-0386092.

11.   Please explain the methodology used to calculate or otherwise determine revenues, compensation, costs, expenses, profits, and/or value of being able to switch automatically and without interruption between "indoor" and "outdoor" networks as those terms are used in U.S. Patent No. 6,922,728 (*see* U.S. Patent No. 6,922,728, Abstract).

12.   Please explain revenues, compensation, consideration, costs, expenses, and profits (including gross and net profits) generated, received, and/or to be received by KAIST (or its employees, agents, parents, or subsidiaries) in connection with the case brought by KAIFI LLC against T-Mobile in the United States District Court for the Eastern District of Texas, Case No. 2:20-cv-00281-JRG and KAIFI LLC against Verizon in the United States District Court for the Eastern District of Texas, Case No. 2:20-cv-00280-JRG.

13.   Please describe your enforcement and/or preparation for enforcement of U.S. Patent No. 6,922,728, including analyses of infringement (*e.g.*, the infringement analysis report or its equivalent generated in connection with the assignment of U.S. Patent No. 6,922,728 to Intellectual Discovery Co., Ltd.), non-infringement, validity, invalidity, enforceability, or unenforceability of U.S. Patent No. 6,922,728.

14.   Please describe presentations, lecture notes, and course syllabi for courses offered by KAIST (or its employees, agents, parents, or subsidiaries, if any) relating to technology for switching or handover between "indoor" and "outdoor" networks as those terms are used in U.S. Patent No. 6,922,728 (*see* U.S. Patent No. 6,922,728, Abstract) from December 1996 to present.

15.   Please explain KAIST's relationship with or agreements or draft agreements (including employee policies and procedures, employment agreements, work-for-hire agreements,

assignment agreements, licensing agreements, IP-ownership agreements, royalty agreements, or other agreements) between KAIST (and its employees, agents, parents, or subsidiaries) and Dong-Ho Cho, Intellectual Discovery Co., Ltd., KAIFI LLC, or any other current or former owner of U.S. Patent No. 6,922,728 or Korean Patent No. 10-0386092, from December 1996 to present.

16. Please explain the policies and practices in place at KAIST concerning patent licensing or commercialization, dating back to December 1996, including:

    a. written licensing policies or best practices;

    b. the economic and technical factors considered in drafting and entering into license, royalty, or settlement agreements;

    c. standard or preferred terms for license agreements;

    d. the process by which KAIST (or its employees, agents, parents, or subsidiaries) determines the nature, scope and terms of license agreements in which it is a licensor; and

    e. circumstances in which KAIST has deviated from such policies.

17. Please describe the ownership, management, and organizational structure of KAIST, including the past and present relationship with Dong-Ho Cho.

18. Please describe the present and past electronic data and document maintenance and retention procedures and policies in place at KAIST, dating back to December 1996.

## WITNESS EXAMINATION QUESTIONNAIRE: Sung-Chul Shin

1. How long have you been employed by KAIST?

2. What are your job duties and responsibilities as President of KAIST (or in your current role, if not President)?

3.    What was your role in the investigations relating to Professor Dong-Ho Cho's participation in what have been described as fake academic conferences, including OMICS?

4.    Please describe the "Minutes of Special Committee for Investigating and Validating Fake Academic Conferences" prepared by You with respect to KAIST's investigation relating to Professor Dong-Ho Cho's participation in what have been described as fake academic conferences, including OMICS, as mentioned in Hankook-Ilbo's online news article provided at the following link:

https://www.hankookilbo.com/News/Read/201910101608378144?did=NA&dtype=&dtypecode=&prnewsid=

5.    What were KAIST's findings as to Dong-Ho Cho's participation in what have been described as fake academic conferences, including OMICS?

6.    What was the discipline or sanction or any unfavorable disposition applied to Dong-Ho Cho by KAIST due to his participation in what have been described as fake academic conferences, including OMICS?