# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| KAIFI LLC<br><br>             Plaintiff,<br><br>   v.<br><br><br><br>T-MOBILE US, INC. and<br>T-MOBILE USA, INC.,<br><br>             T-Mobile. | Case No. 2:20-cv-281-JRG<br><br>**JURY TRIAL DEMANDED**<br><br>Honorable Rodney Gilstrap<br><br><br><br>*FILED UNDER SEAL* |

**PLAINTIFF KAIFI LLC'S OPPOSITION TO T-MOBILE'S MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS AND THE CONTINUED DEPOSITION OF DR. HANBUM CHO WITH RESPECT TO THOSE DOCUMENTS**

KAIFI respectfully requests the Court deny T-Mobile's motion to compel because each of the documents T-Mobile identifies qualifies for protection under either the work-product immunity or the attorney-client privilege.[1]

**I.   ARGUMENT**

    **A.   <u>Items 38-40 Are Protected By The Work Product Privilege.</u>**

*Items 38-40* are ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Ex. 1 (Choung Decl.) ¶ 3. At the time that Mr. Choung created these documents, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id*. ¶ 3. Ultimately, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id*. ¶ 4. Mr. Choung is KAIFI's litigation counsel in this case, and also served as litigation counsel in the prior AT&T matter.[2] *Id*. ¶ 2.

T-Mobile claims that it is "farcical" that Items 38-40 were created ▮▮▮▮▮▮▮▮▮▮ because ID never ended up bringing a patent infringement suit, and instead transferred the patents to KAIFI. Dkt. 173 at 5. T-Mobile's bluster aside, it is irrelevant whether litigation involving ID ever ensued. *Kent Corp. v. N.L.R.B.*, 530 F.2d 612, 623 (5th Cir. 1976) ("Insofar as the [work-product] privilege is meant to promote candid expressions of an attorney's theories and perspectives, *it cannot properly be made to turn on whether litigation actually ensued.*"). Similarly, that KAIFI did not exist at the time the documents were created is of no moment. Courts



---

[1] To abide by the Court's standing order limiting the number of pages submitted in connection with a discovery dispute, KAIFI has not attached copies of these documents for the Court to inspect *in camera*. However, KAIFI is willing to provide copies of these documents at the Court's request.
[2] KAIFI originally listed Dr. Cho as the recipient of these documents on its privilege log, given that he had received them from ID on behalf of KAIFI. When T-Mobile requested additional information, however, KAIFI amended the log to clarify that they had originally been created by Mr. Choung for the prior owner of the '728 Patent.

faced with a nearly identical fact pattern have found that work product immunity applies. For example, in *Limestone Memory Systems, LLC v. Micron Tech., Inc.*, the court considered whether work product immunity applied to documents created for the plaintiff's parent company, Acacia, who was not a party to the suit. No. 15-0278, Dkt. 167, slip op. at 6 (C. D. Cal. Feb. 19, 2019). Micron argued—just as T-Mobile argues here—that the requested documents "predate Limestone's existence, and Limestone could not have anticipated litigation before Limestone existed." *Id*. at 5. The court rejected this argument, expressly holding that "Limestone is correct that it may invoke the attorney work product protection with respect to materials generated before it acquired the patents-in-suit" because "Acacia's attorneys conducted an analysis of the enforceability and strength of the patents-in-suit on behalf of itself and the party that would ultimately own and enforce the patents-in-suit (i.e., its wholly owned subsidiary, Limestone)." *Id*. at 11-`1. The same analysis should apply here.

      T-Mobile next points to an alleged "gap" between the time when Items 38-40 were created and when KAIFI filed suit. Dkt. 173 at 5. But neither the Federal Rules nor case law imposes any temporal requirement on the work product protection, and it is well-established that "litigation need not be imminent." *TIGI Linea Corp. v. Prof. Prods. Grp, LLC*, 2020 WL 7773581, at *6, *7 (E.D. Tex. Dec. 30, 2020). Indeed, T-Mobile's own authority confirms that "[a] document need not be generated in the course of an ongoing lawsuit in order to qualify for work product protection[.]" *S.E.C. v. Microtune, Inc.*, 258 F.R.D. 310, 318 (N.D. Tex. 2009); *United States v. Davis*, 636 F.2d 1028, 1039 (1981) ("litigation need not necessarily be imminent . . . as long as the primary motivating purpose behind the creation of the document was to aid in the possible future litigation."). This Court has routinely found that documents created years before litigation commenced can qualify as work product. *Wi-Lan, Inc. v. Acer, Inc.*, 2010 WL 4118625, *1 (E.D.

Tex. Oct. 18, 2010) (denying motion to compel documents created seven years prior to filing complaint); *Fractus, S.A. v. Samsung Elecs. Co., Ltd.*, 2011 WL 13076782, at *1 (E.D. Tex. Jan. 20, 2011) (denying motion to compel documents created five years prior to filing complaint).[3]

T-Mobile also claims that the documents should not be protected because they would have been "just as useful—and necessary—in a non-litigation, business development context." Dkt. 173 at 5-6.  But the relevant inquiry is not about whether the documents would be "***useful***" for a particular purpose, but instead for what purpose they were ***created***.

In any event, this Court has repeatedly afforded protection to documents that relate to both "overall litigation and licensing strategy." *Mondis Tech., Ltd. v. LG Elecs., Inc.*, 2011 WL 1714304, at *3 (E.D. Tex. May 4, 2011) (denying motion to compel documents regarding litigation and licensing strategy prepared "with the intention of coordinating potential investors to aid in future possible litigation"). For example, in *Fractus*, this Court held that documents relating to a licensing program were protected because Fractus had "engaged [counsel] for the primary motivating purpose of developing a licensing strategy that involved identifying potential infringers of Fractus' patents with the clear goal of filing suit against the alleged infringers, if necessary." 2011 WL 13076782, at *2. Finding "the end-game of the analysis [was] evident," the Court concluded that even if Fractus was not anticipating litigation at the time the documents were created, its "primary motivating purpose . . . was to aid in future litigation." *Id*. The same result is warranted here. The mere fact that ID or KAIFI also engage in patent licensing does not negate the ***primary*** motivation underlying the creation of the documents – i.e., to aid in future litigation.

---

[3] T-Mobile's cited authority does not support its position. In *Elec. Data Sys. Corp. v. Steingraber*, the Court's decision was not based on timing, but rather the fact that "anticipation of litigation was ***not*** the primary purpose" behind creation of the disputed documents. 2003 WL 21653414, at *6-7 (E.D. Tex. July 9, 2003) (emphasis added). Even still, the Court found the work product doctrine protected documents that were created once litigation was imminent. *Id*.

Ex. 1 ¶ 3.[4]

As a last-ditch effort, T-Mobile claims that ID's disclosure of Items 38-40 to KAIFI constitutes "a plain waiver." Dkt. 173 at 6. T-Mobile's argument is based on a willful misreading of the case law. As T-Mobile's own cited case makes clear, waiver only occurs when work product is "treated in a manner that substantially increases the likelihood that an adversary will come into possession of the material." *U.S. v. Homeward Residential, Inc.*, 2016 WL 1031154, at *5-6 (E.D. Tex. Mar. 15, 2016) (no waiver where documents shared with a litigation funder because funders "have an inherent interest in maintaining the confidentiality of potential clients' information"). Here, ID had no reason to believe that its affiliate, KAIFI— ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬—would share the documents with alleged infringers. In similar circumstances, courts routinely decline to find waiver. *Am. Video Graphics, L.P. v. Hewlett-Packard Co.*, 6:04-CV-397, D.I. 384, slip op. at 2 (E.D. Tex. July 29, 2005) (no waiver when documents exchanged between parties negotiating the acquisition of patents, as meetings were "not adversarial in nature, but rather a consideration of the expansion of the [ ] patent litigation portfolio"); *Fractus,* 2011 WL 13076782, at *3 (E.D. Tex. Jan. 20, 2011) (no waiver where "there [was] no indication that [the third-party] was an adversary").

*Wi-Lan, Inc. v. Acer, Inc.* is instructive. 2010 WL 4118625 (E.D. Tex. Oct. 18, 2010).

---

[4] Once again-Mobile's citation to *Elec. Data Sys. Corp.* does not support its position. There, the Court identified "[f]actors that courts rely on to determine the primary motivation for the creation of a document" including "the retention of counsel and his involvement in the generation of the document" and whether it was "a routine practice to prepare that type of document" or instead "prepared in response to a particular circumstance." 2003 WL 21653414, at *5 (E.D. Tex. July 9, 2003). While in *Elec. Data* the documents were related to an internal inquiry that would have been performed even in the absence of litigation, here the disputed documents were prepared by retained counsel in preparation to file claims of patent infringement. *See id.* at *6; Ex. 1 ¶ 3.

4

There, Defendants moved to compel an expert report prepared seven years prior to filing suit, and disclosed to a third-party during negotiation of a potential purchase of Wi-LAN's intellectual property. *Id*. at *1. Wi-LAN argued that the report was protected, and its disclosure to a potential purchaser during due diligence did not constitute waiver. *Id*. at *2. The Court agreed, finding that "work product protection exists to 'promote the adversary system by safeguarding the fruits of an attorney's trial preparations from the discovery attempts of an opponent'" and "the mere voluntary disclosure to a third person is insufficient in itself to waive the work product privilege." *Id*. at *5.

### B. Item 41 Constitutes A Privileged Attorney-Client Communication.

*Item 41* ███████████████████████████████████████████████

███████████████████████████. Ex. 1 ¶ 4. At the time, ███████████████████

███████████████████████████████████████████ *Id*. Mr. Choung's revisions to the PPA are plainly protected by the attorney-client privilege. *Tech Pharm. Servs., LLC v. Alixa Rx LLC*, 2017 WL 3521727, *1 (E.D. Tex. Aug. 16, 2017) (denying motion to compel production of draft documents that included comments exchanged between counsel and client); *see also Imperium (IP) Holdings, Inc. v. Apple Inc. et al.*, 11-cv-00163, Dkt. 303, slip op. at 2-3 (E.D. Tex. Dec. 13, 2012) (denying motion to compel communications between attorney and client where attorney "was hired in two capacities . . . as a general business analyst [and] as an attorney, holding that "any communications related to her work as an attorney would not be discoverable" nor would "any work that combined her business analyst role and attorney role.").

### C. Dr. Cho's Wi-Fi Calling Report is Protected Work Product.

Dr. Cho's Wi-Fi Calling Report is protected work product because it was prepared in anticipation of litigation at the direction of ID's in-house attorneys. *See* Fed. R. Civ. P. 26(b)(3)(A). T-Mobile's only arguments to the contrary are irrelevant red herrings.

As an initial matter, T-Mobile misrepresents the facts underlying the Wi-Fi Calling Report.

5

T-Mobile claims Dr. Cho prepared the report as a "prospective employe[e] in order to get himself hired" and that Dr. Cho did not remember who asked him to prepare it. Dkt. 173 at 3. Neither of these statements is true. Dr. Cho, who is a registered patent agent, testified ███████████

███████████████████████████████████████████████████████

███████████████████████████████████████████
███████████████████████████████████████████
██████████████████████
██
███████████████████████████████████████████
███████████████████████████████████████████
████████████████████████████████████
█
██████
███████████████████████████████████████████
███████████████████
██████████████████████

Ex. 2 (Cho Dep.) at 235:18-236:13. He also testified ████████████████████████

████████████████████████████████ Dkt. 173-1 at 177:12-20.[5]

Because Dr. Cho's analysis was prepared at the direction of an attorney (i.e., ID's in-house counsel) in anticipation of litigation, it qualifies for work-product protection. Contrary to T-Mobile's suggestion, Dr. Cho's employment status at the time he prepared the report is irrelevant. T-Mobile's only cited case, *Total Safety U.S., Inc. v. Rowland*, 2014 WL 2739392, at *4 (E.D. La.

---

[5] ID attorneys initially instructed Dr. Cho "to review patents, including the patents that [were] outside the scope of this litigation, [ ] as well as the '728 patent." Ex. 2 at 240:8-12. While Dr. Cho mistakenly believed they had requested a written report, they ultimately requested that he send the written analysis to them, which he did. Dkt. 173-1 at 173:1-6 ("Q: Did you end up sending the WiFi calling report to anyone at Intellectual Discovery? A: Yes. Q: Who at Intellectual Discovery did you send it to? A. My memory is not too clear at the moment, but it was either Mr. Yang or Mr. Yoo. Both of them are the patent attorney[s] at Intellectual Discovery."); Ex. 2 at 240:19-241:6 ("So my testimony previously was, I was mistaken whether they specifically requested a written report. And I told them I was mistaken. I spent some time looking at this patent. And then eventually, they said, yes, please forward that to us. So I understand the instruction was there to look at the patent. And then at their request, I forwarded the report to them.").

6

June 17, 2014), is inapposite because it concerned a party's request to take the deposition of opposing counsel, which requires that "the information sought is relevant and non-privileged." Because plaintiff sought to depose counsel regarding a conversation that took place before the defendant had retained counsel, the court concluded that the information was non-privileged and therefore discoverable. *Id.* at *6.  KAIFI is not asserting attorney-client communication privilege over the WiFi Calling Report. Rather, because the document was prepared at the direction of an attorney to aid in future litigation, it is protected by work product immunity.

Finally, the relevant inquiry is not (as T-Mobile suggests) whether the report would be "equally relevant" to non-litigation purposes. As discussed above, a document need not be solely relevant to litigation to qualify for work product protection, "as long the ***primary motivating purpose*** behind the creation of the document [is] to aid in possible future litigation." *U.S. v. Davis*, 636 F.2d at 1039 (emphasis added). *ReedHycalog v. Baker Hughes Oilfield Operations Inc.* (Pl. Br. at 7) does not hold otherwise. 242 F.R.D. 357, 361 (E.D. Tex. 2007). In that case, *ReedHycalog*'s attorney expressly testified that the company was "was not in contemplation of litigation" at the time the documents were prepared. *Id.* at 361. The Court found this testimony to constitute a disclaimer of the work product protection. *Id*. No such disclaimer has occurred here.

### D. T-Mobile's Waiver Arguments Are Unavailing.

There is no basis to suggest that KAIFI waived privilege. Items 38-41 were identified on KAIFI's initial privilege log, served April 21, 2021. Dr. Cho's Wi-Fi Calling Report—which was located during KAIFI's ESI search—was timely logged on its ESI privilege log.[6]

---

[6] KAIFI repeatedly asked T-Mobile to agree on a date for the mutual exchange of ESI productions and privilege logs.  Ex. 3.  T-Mobile refused to respond and failed to produce any ESI or ESI privilege log prior to the fact discovery cut-off.  *See* Dkt. 178.  KAIFI unilaterally served its ESI privilege log on July 16, 2021 when it became clear that T-Mobile would not be complying with the discovery cut-off.  Thus, it is T-Mobile, not KAIFI, who sought to "run out the clock."

| | |
|---|---|
| Date: August 3, 2021 | */s/ Robert Christopher Bunt*<br>Robert Christopher Bunt<br>Texas Bar No. 00787165<br>PARKER, BUNT & AINSWORTH PC<br>100 E. Ferguson St., Suite 418<br>Tyler, Texas 75702<br>Telephone: (903) 531-3535<br>Email: rcbunt@pbatyler.com<br><br>Jason G. Sheasby<br>Cal. Bar No. 205455 (admitted *pro hac vice*)<br>Irell & Manella LLP<br>1800 Avenue of the Stars Suite 900<br>Los Angeles, CA 90067-4276<br>Telephone: 310.277-1010<br>Facsimile: 310-203-7199<br>Email: jsheasby@irell.com<br><br>Rebecca Carson<br>Cal. Bar No. 254105 (admitted PHV)<br>IRELL & MANELLA, LLP<br>840 Newport Center Drive, Suite 400<br>Newport Beach, CA 92660<br>Telephone: 949-760-0991<br>Facsimile: 949-760-5200<br>Email: rcarson@irell.com<br><br>Andrew Choung<br>Cal. Bar No. 203192 (admitted in E.D. Texas)<br>Nixon Peabody LLP<br>300 S. Grand Avenue, Suite 4100<br>Los Angeles, CA 90071<br>Telephone: 213-629-6166<br>Fax: 213-629-6001<br>Email: achoung@nixonpeabody.com<br><br>Enoch H. Liang<br>Cal. Bar No. 212324 (admitted in E.D. Texas)<br>LTL ATTORNEYS LLP<br>300 S. Grand Ave., 14th Fl.<br>Los Angeles, California 90071<br>Telephone: (213) 612-8900<br>Facsimile: (213) 612-3773<br>Email: enoch.liang@ltlattorneys.com<br><br>*Attorneys for Plaintiff KAIFI LLC* |

8

## **CERTIFICATE OF SERVICE**

I hereby certify that all counsel of record, who are deemed to have consented to electronic service are being served this 3rd day of August 2021, with a copy of this document via the Court's CM/ECF system.

*/s/ Robert Christopher Bunt*
ROBERT CHRISTOPHER BUNT

**CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL**

I hereby certify that under L.R. CV-5(a)(7)(B) that the foregoing document is filed under seal pursuant to the Court's Protective Order entered in this matter (Dkt. No. 80).

                                                */s/ Robert Christopher Bunt*
                                                ROBERT CHRISTOPHER BUNT