**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| KAIFI LLC<br><br>    Plaintiff,<br><br> v.<br><br><br><br>T-MOBILE US, INC. and<br>T-MOBILE USA, INC.,<br><br>    T-Mobile. | Case No. 2:20-cv-281-JRG<br><br>**JURY TRIAL DEMANDED**<br><br>Honorable Rodney Gilstrap<br><br>*FILED UNDER SEAL* |

**PLAINTIFF KAIFI LLC'S OPPOSITION TO T-MOBILE'S MOTION TO COMPEL
THE CONTINUED DEPOSITION OF DR. HANBUM CHO**

KAIFI respectfully requests that the Court deny T-Mobile's motion to compel further deposition from KAIFI's CEO, Dr. Hanbum Cho. On July 2, 2021, T-Mobile deposed Dr. Cho for over seven hours. Its motion is nothing more than a transparent attempt to manufacture a privilege dispute in order to obtain a "do-over" deposition. T-Mobile's ploy should be rejected.

**I.   ARGUMENT**

    **A.   T-Mobile Has Already Obtained All Discoverable Information From Dr. Cho Regarding His Initial Conversations With Intellectual Discovery.**

T-Mobile first claims that it should be entitled to additional deposition testimony from Dr. Cho, because—according to T-Mobile—"KAIFI shut down entire lines of questioning regarding Dr. Cho's early conversations with Intellectual Discovery." Dkt. 172 at 1. This is simply not true.

Dr. Cho testified ████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████ *See* Ex. 1 (Cho Depo. Tr.) at 46:17-53:24. Contrary to T-Mobile's assertion, Dr. Cho provided extensive, substantive testimony regarding this conversation:



- *The subject matter of their conversation.* Ex. 1 at 46:17-47:10 ████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████.

- *Whose idea it was to run a licensing program*. *Id*. at 47:12-15 ████████ ██████████████████████████████████████.

- *Who first mentioned the '728 patent*. *Id*. at 47:16-18 ████████████████;

- *Whether Dr. Cho had heard of the '728 patent before Mr. Bae raised it during that conversation*. *Id*. at 47:19-21 ████████.

- *What Mr. Bae told him about the '728 Patent*. *Id*. at 47:22-48:10; 49:13-21 ██ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ██████████████.

- *What Mr. Bae and Dr. Cho told each other about Wi-Fi calling*. *Id*. at 49:25; Dkt. 172-1 at 50:1-5; 51:4-13 ████████████████████████████████████████████

███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
████████████████████████████████.

- *What Mr. Bae and Dr. Cho talked about in terms of the merits of the invention*. Dkt. 172-1 at 50:9-15 ████████████████
███████████████████████████████████████████████
████████████████████████████████.

Dr. Cho testified ████████████████████████████████

████████████████████████████████████ Dkt. 172-1 at 60:21-61:25

(████████████████████████████████████████). During this time frame, ID and Dr. Cho were both being represented by Mr. Choung.  Ex. 1, at 72:8-12

(████████████████████████████████████████████████

████████████████████████████████████); Dkt. 185-1 (Choung

Decl.), ¶ 3.  ████████████████████████████████████

████████████████████████████████████████████████

*In re Regents of U. of California*, 101 F.3d 1386, 1389 (Fed. Cir. 1996) (holding that "[w]hen the same attorney represents the interests of two or more entities on the same matter, those represented are viewed as joint clients for purposes of privilege" and finding attorney-client privilege protected communications between patent assignee and counsel for assignor because counsel "represented both [entities] in a shared effort to obtain these United States and foreign patent rights").

T-Mobile identifies just four questions regarding Dr. Cho's pre-suit conversations with ID where Dr. Cho was supposedly improperly instructed not to answer on privilege grounds. Three of these were broad questions about "potential targets," the names of any "American telecommunications companies," and the "value of the '728 Patent." *See* Dkt. 172-1 at 51:14-52:3; 57:23-24. As worded, these questions were not limited to the initial conversation that Dr.

2

Cho had with Mr. Bae, and thus improperly encompassed privileged information from the conversations that involved the parties' attorneys. *Nester v. Textron, Inc.*, 2015 WL 1020673, at *4 (W.D. Tex. Mar. 9, 2015) (holding communications between joint clients and their mutual attorney were privileged, noting that "[s]o long as [counsel] was authorized to represent both RJL and Textron, it is black letter Texas law that both RJL and Textron's communications made to the attorney for the purpose of facilitating the rendition of legal services to the clients are privileged, except in a controversy between the clients.").[1]

The only other question T-Mobile identifies is: "During your initial conversation with Mr. Bae regarding the '728 patent, did either of you discuss entities who might be using the '728 patent in their WiFi calling systems?" Dkt. 172 at 4. Even though the initial conversation between Mr. Bae and Dr. Cho did not directly involve lawyers, ID had already retained litigation counsel by that time. Dkt. 185-1 (Choung Decl.) ¶ 3. Any response to this question—which seeks information about potential infringers—would undoubtedly reveal the content of ID's attorneys' infringement analysis, which is protected by the work product immunity. *Limestone Memory Systems, LLC v. Micron Tech., Inc.,* No. 15-0278, Dkt. 167, slip op. at 12 (C. D. Cal. Feb. 19, 2019) (applying work product doctrine to deny motion to compel documents containing "an analysis of the enforceability and strength of the patents-in-suit" prepared by third-party "on behalf of itself and the party that would ultimately own and enforce the patents-in-suit (i.e., its wholly owned subsidiary."); *Hickman v. Taylor*, 329 U.S. 495, 511 (1947) (protected work product may be reflected "in interviews, statements, memoranda, correspondence, briefs, mental impressions,

---

[1] Even if these questions had been limited to the initial conversation between Dr. Cho and Mr. Bae, the instructions would still be proper because the questions expressly seek information about litigation targets and the value of the '728 Patent and—as discussed below—the answers to these questions would reveal the substance of attorney work product.

3

personal beliefs, and countless other tangible and intangible ways."). Moreover, as discussed in detail in Dkt. 185, KAIFI's opposition to T-Mobile's motion to compel documents, the disclosure of this work product to Dr. Cho would not constitute waiver because Dr. Cho was a non-adversarial third-party. *See Fractus, S.A. v. Samsung Elecs. Co., Ltd.*, 2011 WL 13076782, *2-3 (E.D. Tex. Jan. 20, 2011) (work product privilege is not waived where "there is no indication that [third-party] was an adversary or that the disclosure substantially increas[ed] the likelihood that an adversary would gain possession" of the information"); *Wi-Lan, Inc. v. Acer, Inc*. 2010 WL 4118625, at *5 (E.D. Tex. Oct. 18, 2010) ("the mere voluntary disclosure to a third person is insufficient in itself to waive the work product privilege.").

Finally, the futility of T-Mobile's request is further underscored by Dr. Cho's express confirmation at his deposition that he did not withhold any information regarding his initial conversation with Mr. Bae based on counsel's privilege objection. Ex. 1 at 48:17-49:2 ( ). Given this testimony, there is no basis for T-Mobile's request to continue questioning on Dr. Cho's initial communications with ID.

### B. T-Mobile Is Not Entitled To Testimony About Work Product Documents

T-Mobile next claims that it should be allowed to question Dr. Cho about the patent analyses ID gave him at the closing of the Patent Purchase Agreement ("PPA") and his Wi-Fi Calling Report. T-Mobile's contention is based on largely a repeat of its arguments for its separate motion to compel production of the production of the documents themselves (Dkt. 173), and should be rejected for the same reasons. Indeed, as explained in KAIFI's opposition to that motion, incorporated by reference herein, these documents were prepared by or at the direction of counsel in anticipation of litigation. T-Mobile's questions to Dr. Cho regarding the contents of these documents were therefore improper, and KAIFI's objections must be sustained. *Odyssey Wireless,*

*Inc. v. Samsung Elecs. Co., Ltd*, 2016 WL 7665898, at *9 (S.D. Cal. Sept. 20, 2016) ("where a document protected by this [work-product] privilege contains an attorney's opinions, questions regarding those opinions are barred"); *Sanchez v. Matta*, 229 F.R.D. 649, 659 (D.N.M. 2004) (deposition questioning regarding contents of work product "would reveal information tending to directly or indirectly show counsel's thoughts, opinions, or strategies" and thus would improperly violate the work-product privilege).

The additional arguments raised by T-Mobile do not change the result. For example, T-Mobile claims that Dr. Cho's Wi-Fi Calling Report could not constitute work product because ID did not compensate Dr. Cho for it. But T-Mobile cites no authority for the proposition that work product immunity has a compensation requirement, and there is none.

Nor does it matter that Dr. Cho misunderstood ID's request, and prepared a written report when ID had initially requested that he simply review/analyze the '728 Patent and prepare a written report regarding a different patent. Dr. Cho testified ███████████████████████████████████████████████████████████████████████████████████████████ Dkt. 185-2 (Cho. Dep.) at 240:8-18. Whether the report was written or oral does not affect its protected status. *Hickman*, 329 U.S. at 510-11 (work product protection "extends to both tangible documents and intangible information prepared in the anticipation of litigation."). Indeed, T-Mobile's argument would be akin to saying that an attorney's written memo analyzing an issue does not qualify as work product if the client requesting the analysis thought that the attorney would merely provide an oral response. This would make no sense.

Finally, T-Mobile's assertion that KAIFI's counsel prevented Dr. Cho from testifying about the facts needed to establish the work product immunity is not true. T-Mobile quotes two

5

questions in its motion that drew objections because they went beyond the facts needed to establish the privilege, while omitting the key question that Dr. Cho answered: ▮

▮

▮ Dkt. 172-1 at 177:12-20. Similarly, the question that T-Mobile cites regarding the patent analysis documents that KAIFI received from ID in connection with the PPA closing asks about the substance and content of those analyses, which is inappropriate. *Odyssey Wireless,* 2016 WL 7665898, at *9 ("where a document protected by this [work-product] privilege contains an attorney's opinions, questions regarding those opinions are barred").

### C. T-Mobile's Questions Regarding KAIFI's Negotiation of the Patent Purchase Agreement and Its Amendments Sought Privileged Information

T-Mobile's third and final request for additional testimony from Dr. Cho about the amendment to the PPA is equally baseless. T-Mobile misleadingly cites a single question/answer, while failing to disclose to the Court the entire line of questioning or even attaching the relevant excerpts to its motion. The surrounding testimony that T-Mobile concealed from the Court makes clear that Dr. Cho did not speak to ID about the amendment to the PPA until after it was signed, that Dr. Cho does not remember the substance of his call with ID, that counsel's instruction was perfectly appropriate, and that Dr. Cho does not have any further testimony on this issue to compel.

As an initial matter, Dr. Cho testified that he did not remember talking to anyone at ID about the amendment before it was signed. Ex. 1 at 207:17-20 ▮

▮

▮. Thus, T-Mobile's request for testimony about the "negotiation" of the PPA is futile because Dr. Cho is not aware of any such negotiations.

With respect to subsequent conversations, Dr. Cho repeatedly testified ▮

▮ Ex. 1 at 211:10-211:18 (▮

▮); *Id*. at 214:1-11 (▮

▮).

Given this record, it is clear that Dr. Cho does not have any additional testimony to provide.

Unsatisfied with Dr. Cho's responses, however, T-Mobile's counsel tried to bully Dr. Cho into changing his response and/or revealing the litigation strategy behind the amendment. Ex. 1 at 211:19-212:2. In response, ▮

▮ *Id*. at 212:4-6. T-Mobile's counsel nevertheless went on to ask nearly the same question again, and counsel appropriately cautioned the witness not to reveal privileged information. *Id*. at 212:8-213:15. It is not surprising that Dr. Cho could not answer questions about the reasons for the PPA amendment without revealing litigation strategy that he learned from his attorneys, given that the PPA occurred during the KAIFI-AT&T litigation and in response to arguments made by AT&T. T-Mobile is not entitled to further testimony on this topic.

## II.     CONCLUSION

KAIFI respectfully requests that the Court deny T-Mobile's motion in its entirety.

| | |
|---|---|
| Date: August 3, 2021 | */s/ Robert Christopher Bunt* <br> Robert Christopher Bunt <br> Texas Bar No. 00787165 <br> PARKER, BUNT & AINSWORTH PC <br> 100 E. Ferguson St., Suite 418 <br> Tyler, Texas 75702 <br> Telephone: (903) 531-3535 <br> Email: rcbunt@pbatyler.com <br><br> Jason G. Sheasby <br> Cal. Bar No. 205455 (admitted *pro hac vice*) <br> Irell & Manella LLP <br> 1800 Avenue of the Stars Suite 900 <br> Los Angeles, CA 90067-4276 <br> Telephone: 310.277-1010 <br> Facsimile: 310-203-7199 <br> Email: jsheasby@irell.com <br><br> Rebecca Carson <br> Cal. Bar No. 254105 (admitted PHV) <br> IRELL & MANELLA, LLP <br> 840 Newport Center Drive, Suite 400 Newport Beach, CA 92660 <br> Telephone: 949-760-0991 <br> Facsimile: 949-760-5200 <br> Email: rcarson@irell.com <br><br> Andrew Choung <br> Cal. Bar No. 203192 (admitted in E.D. Texas) <br> Nixon Peabody LLP <br> 300 S. Grand Avenue, Suite 4100 Los Angeles, CA 90071 <br> Telephone: 213-629-6166 <br> Fax: 213-629-6001 <br> Email: achoung@nixonpeabody.com <br><br> Enoch H. Liang <br> Cal. Bar No. 212324 (admitted in E.D. Texas) <br> LTL ATTORNEYS LLP <br> 300 S. Grand Ave., 14th Fl. <br> Los Angeles, California 90071 <br> Telephone: (213) 612-8900 <br> Facsimile: (213) 612-3773 <br> Email: enoch.liang@ltlattorneys.com <br><br> *Attorneys for Plaintiff KAIFI LLC* |

8

**CERTIFICATE OF SERVICE**

I hereby certify that all counsel of record, who are deemed to have consented to electronic service are being served this 3rd day of August 2021, with a copy of this document via the Court's CM/ECF system.

>                */s/ Robert Christopher Bunt*
>                ROBERT CHRISTOPHER BUNT

**CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL**

I hereby certify that under L.R. CV-5(a)(7)(B) that the foregoing document is filed under seal pursuant to the Court's Protective Order entered in this matter (Dkt. No. 80).

>                */s/ Robert Christopher Bunt*
>                ROBERT CHRISTOPHER BUNT