IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| KAIFI LLC, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO.  2:20-CV-00281-JRG |
| | § | |
| T-MOBILE US, INC.,  ET AL., | § | |
| | § | |
| *Defendants*. | § | |
| | § | |
| | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is Defendants T-Mobile US, Inc., T-Mobile USA, Inc., MetroPCS Texas, LLC, T-Mobile West LLC, T-Mobile West Tower LLC, T-Mobile Resources Corporation, Layer3 TV, Inc., And L3TV Dallas Cable System, LLC's Motion to Dismiss for Lack of Patent Eligibility Under 35 U.S.C. § 101 (the "Motion") (Dkt. No. 55).  In the Motion, T-Mobile US, Inc., T-Mobile USA, Inc., MetroPCS Texas, LLC, T-Mobile West LLC, T-Mobile West Tower LLC, T-Mobile Resources Corporation, Layer3 TV, Inc., and L3TV Dallas Cable System, LLC (collectively, "T-Mobile" or "Defendants") request that the Court dismiss the above-captioned case because the asserted claims of U.S. Patent No. 6,922,728 (the "Patent-in-Suit" or "'728 Patent") recite patent-ineligible subject matter under 35 U.S.C. § 101.  Having considered the Motion, the subsequent briefing, and for the reasons set forth herein, the Court is of the opinion that the Motion should be **DENIED**.

### I.    BACKGROUND

On August 28, 2020, Kaifi LLC ("Kaifi" or the "Plaintiff") filed the above-captioned lawsuit against Defendants, alleging infringement of claims 1-7, 9-15, and 17-21 of the '728 Patent (the "asserted claims") (Dkt. No. 1; Dkt. No. 55 at 1).  The '728 Patent is entitled "Optimal Internet

Network Connecting and Roaming System and Method Adapted for User Moving Outdoors or

Indoors." (Dkt. No. 1-2 at 2.) It purports to describe:

> an internet connection Switching System and method which allows
> a user to connect with the internet through an indoor wired LAN
> when a mobile data communication terminal is located indoors and
> allows the user to connect with the internet through a wireless LAN
> network or an outdoor wireless internet network of a wireless packet
> network when it is located outdoors.

(*Id*. at 10.)  Claims 1 and 12 of the '728 Patent are the only independent claims.  Claim 1 is a

system claim and recites the following:

> 1. An internet network connecting and roaming system providing
> internet communication service to a data communication terminal of
> a user moving indoors or outdoors, using an outdoor wireless
> internet network including an antenna, a router and a location
> register, and an indoor network including an indoor gateway
> connectable with an internet network, the system comprising:
>
> > a data communication terminal that includes an indoor
> > wireless connection module and stores registered indoor
> > system ID information, so that the data communication
> > terminal may be connected with the indoor network if the
> > registered indoor system ID information is received and by
> > connecting with the outdoor wireless internet network if the
> > registered indoor system ID information is not received;
> >
> > an indoor gateway that includes an indoor wireless
> > connection module therein, broadcasts the indoor system ID
> > information, makes wireless communications with the data
> > communication terminal through the indoor wireless
> > connection module, and is connected with the internet
> > network via a wire;
> >
> > a location register that stores location information of the data
> > communication terminal received through the indoor
> > network or outdoor wireless internet network; and
> >
> > a router that determines the location of the data
> > communication terminal stored in the location register and
> > provides roaming of voice/data signals provided to the user
> > by selecting one of the indoor and the outdoor networks in
> > accordance with the determined location of the data
> > communication terminal.

2

Claim 12 is a method claim and states the following:

> 12. An internet network connecting and roaming method for providing internet communication service to a data communication terminal of a user moving indoors or outdoors using an outdoor wireless internet network including an antenna, a router and a location register, and an indoor network including an indoor gateway connectable with an internet network, the method comprising:
>
> > a first step of providing the user with a communication service by connecting with the outdoor wireless internet network when the user is located outdoors;
> >
> > a second step of determining whether when indoor system ID information is received by the data communication terminal and the received indoor system ID information is identical to indoor system ID information stored in the location register;
> >
> > a third step of going through authentication of an indoor location of the data communication terminal by the location register and storing the indoor location into the location register if it is determined in the second step that the two of ID information are equal to each other;
> >
> > a fourth step of connecting with the internet network by switching connection of the data communication terminal from the outdoor wireless internet network to the indoor gateway and making wireless communications through the indoor gateway and an indoor wireless connection module;
> >
> > a fifth step of, when the data provided from the internet network in accordance with location information stored in the location register are transferred to the indoor gateway, supplying the data communication terminal with the data through the indoor gateway and the indoor wireless connection module;
> >
> > a sixth step of going through authentication of an outdoor location of the data communication terminal by the location register and storing the outdoor location into the location register when the indoor system ID information is not received; and

3

> a seventh step of switching the connection of the data
> communication terminal from the indoor gateway to the
> outdoor wireless internet network and performing the first
> step again.

(*Id*. at 9-10.)

In a prior case also involving the '728 Patent, several terms at issue here were construed

by the Court.  *Kaifi LLC v. AT&T Corp.*, No. 2:19-CV-00138-JRG, 2020 WL 1905358, at *4 (E.D.

Tex. Apr. 17, 2020).  For example, the term "provides roaming of voice/data signals provided to

the user" was construed to mean "provides switching the network path of the voice/data

communications automatically and without interruption."  *Id*.

## II.     LEGAL STANDARD

To evaluate the Motion, the Court may consider the complaint, the documents attached to

the complaint, and documents "attached to the motion to dismiss that are central to the claim and

referenced by the complaint." *Lone Star Fund V (U.S.) L.P. v. Barclays Bank PLC*, 594 F.3d 383,

387 (5th Cir. 2010). The Court will grant a motion to dismiss for lack of patent eligibility under

35 U.S.C. § 101 only where "there are no factual allegations that, taken as true, prevent resolving

the eligibility question as a matter of law." *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759,

765 (Fed. Cir. 2019).

The Court determines whether patent claims cover ineligible subject matter using a two-

step analytical framework set out by the Supreme Court of the United States in *Alice Corp. v. CLS*

*Bank Int'l*, 573 U.S. 208 (2014). At the first step, the Court evaluates whether the claims are

directed to ineligible subject matter, such as an abstract idea.  *Id*. at 217.  To do so, the Court looks

to the claims' "character as a whole."  *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed.

Cir. 2016).  While all claims embody abstract ideas and other ineligible subject matter at some

level, the Court's task is to examine "whether the claims [] focus on a specific means or method

that improves the relevant technology or are instead directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery." *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016).

At *Alice* step two, if the claims are directed to ineligible subject matter, the Court then determines whether the claims contain an "inventive concept—i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [abstract idea] itself." *Alice*, 573 U.S. at 217–18 (internal citations and quotes omitted).   "[A]n inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces," *BASCOM Glob. Internet Svcs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1349-50 (Fed. Cir. 2016), but must be more than mere "'well-understood, routine, conventional activit[ies],'" *Alice*, 573 U.S. at. at 225 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 71 (2012)).   "While the ultimate determination of eligibility under § 101 is a question of law, like many legal questions, there can be subsidiary fact questions which must be resolved en route to the ultimate legal determination." *Aatrix Software, Inc. v. Green Shades Software, Inc.,* 882 F.3d 1121, 1127-1128 (Fed. Cir. 2018). "The question of whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field is a question of fact." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018).

### III.    ANALYSIS

T-Mobile contends that the asserted claims of '728 Patent are ineligible under 35 U.S.C. § 101 because they fail both steps of the *Alice* framework.   First, T-Mobile argues that the claims are directed to the abstract idea of "routing a communication on one path or another, based on the recipient's location" or, more specifically, "routing communications to either an indoor network

or an outdoor network, in accordance with a determination as to whether the recipient device is located indoors or outdoors." (Dkt. No. 55 at 6.)  Next, assuming the Court agrees that the claims are so directed, T-Mobile contends that the claims recite nothing more than conventional well-understood technology used in the ordinary manner and do not contain any inventive concept capable of rendering them patentable.  (*Id*. at 15-17.)  For the reasons set forth below, the Court agrees with T-Mobile as to *Alice* step one but disagrees with regard to step two.

## A.  The Claims Are Directed to An Abstract Idea

Regarding step one of the *Alice* framework, T-Mobile argues that the asserted claims of the '728 Patent are "focused on the abstract idea of routing the user's communications on one path or another (to an indoor network or an outdoor network) based on the location of the user's data communication terminal (indoors or outdoors)." (Dkt. No. 55 at 12.)  According to T-Mobile, the language of claims 1 and 12—the only asserted independent claims—supports this contention because it merely recites the equipment and steps necessary for achieving the abstract result of "switching from outdoors to indoors and back again" depending on the location of  the user.  (*Id*. at 13.)  In addition, T-Mobile contends that the specification of the '728 Patent further supports this reading because the stated focus of the invention is switching networks based on a user's location rather than any specific technological advance in networking technology or routers.  (*Id*.)  Finally, T-Mobile points out that the '728 Patent does not purport to have invented any new aspect of an indoor or outdoor network, which it contends further demonstrates that the focus of the claims is merely the abstract switching between networks.  (*Id*. at 13-14.)

Kaifi responds that the claims are not directed to an abstract idea, but instead recite a "specific technical solution" to the "computer-specific problem arising from the difficulty of determining 'an optimal network path' automatically and without interrupting the continuous

6

voice/data communication." (Dkt. No. 77 at 13-15.)  Kaifi contends that the claimed system and method "recite[] a router that provides switching the network path of the voice/data communications automatically and without interruption to the communications as the user moves indoors (or outdoors)." (*Id*. at 20-22.)

In addition, Kaifi asserts that T-Mobile's *Alice* step one analysis is fundamentally flawed because "their motion does not accurately describe the technological significance of each of the claimed elements and their combined effects." (*Id*. at 22.)  Kaifi contends that T-Mobile "disregarded specific claim elements and oversimplified the claims." *Id*.

The Court agrees with T-Mobile.  The asserted claims are directed to the abstract idea of routing a communication on one path or another, based on the recipient's location.  Contrary to Kaifi's arguments, the claims do not recite a specific technological improvement to router technology or a concrete solution to the problem of determining the optimal router network path for voice or data transmission automatically and without interruption.  Rather, the claims recite, at a high level, conventional router equipment and steps for switching from an outdoor network to an indoor network when a user moves inside and are directed to that concept generally.  The fact that the claim language has been construed to mean the transition takes place automatically and without interruption does not change this overall abstract direction.

The claims of the '728 Patent are also distinguishable from the claims in the various cases Kaifi relies upon for support.  For example, the claims in *Uniloc USA, Inc. v. LG Electronics USA* went beyond the mere concept of performing additional polling in wireless communication systems by altering the conventional inquiry message to include a data field for polling.  957 F.3d 1303, 1307-08 (Fed. Cir. 2020).  It was this specific improvement to the existing technology that resulted in the claimed benefit of reduced latency.  *Id*.  Likewise, in *SRI Int'l, Inc. v. Cisco Systems,*

*Inc.*, the claims were directed not to the mere collection of data—as the defendant had argued—but instead recited a specific technique that caused elements of the system (i.e., network monitors) to operate in something other than the normal, expected manner and solve a technological problem by doing so.  930 F.3d 1295, 1304 (Fed. Cir. 2019).[1]

Here, Kaifi has not identified any way in which the system and method claimed in the '728 Patent—or any element of the asserted claims—alters the conventional data or equipment used in the transmission of voice or data signals over an indoor or outdoor network and further fails to describe how any steps or elements in the asserted claims cause conventional equipment to operate in an unconventional manner.  Rather, the Court agrees with T-Mobile that the decision in *Voip-Pal.Com, Inc. v. Apple Inc.*, 411 F. Supp. 3d 926 (N.D. Cal. 2019), *aff'd*, 828 F. App'x 717 (Fed. Cir. 2020) is instructive.  In *Voip-Pal*, as here, the claims recited methods and systems for routing communication and purported to describe an improved way to route said communication.  *Id*. at 963.  While the plaintiff argued that the claims recited an improvement to computer functionality—as Kaifi does here—the Court determined that the claims "fail[ed] to provide any specific or concrete means for achieving the desired result."  *Id*. at 963.  Likewise, here, the claims do not describe in sufficient detail how to achieve the alleged seamless transition between an indoor and outdoor network or any other proposed technological benefit and thus do not rise above being directed to the mere abstract idea of doing so.

---

[1] The other cases cited by Kaifi are equally inapposite.  The claims in this case do not recite a new kind of system that can automate and improve a process previously done by human beings.  *EcoServices, LLC v. Certified Aviation Servs., LLC,* 830 F. App'x 634, 645 (Fed. Cir. 2020) (nonprecedential).  The claims do not recite "specific technological features functioning together to provide [a] granular, nuanced, and useful" technological result.  *Packet Intelligence LLC v. NetScout Syss. Inc.*, 965 F.3d 1299, 1309-10 (Fed. Cir. 2020).  Likewise, the claims do not contain the kind of specific rules found patentable in *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299 (Fed. Cir. 2016) or the kind of "specific" solution "directed to improving a basic function of a computer [] network" in *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278 (Fed. Cir. 2020).

None of Kaifi's remaining arguments are persuasive, and the Court therefore concludes that the asserted claims are directed to the abstract idea of routing a communication on one path or another, based on the recipient's location.

**B.  There are Disputed Issues of Fact Whether the Claims Contain an Inventive Concept.**

Regarding step two of the *Alice* framework, T-Mobile argues that there is nothing in the asserted claims of the '728 Patent that constitutes an "inventive concept" capable of rendering the claims patent eligible.  (Dkt. No. 55 at 15.)  T-Mobile asserts that the '728 Patent does not purport to have invented "new networks or networking components, or even any known components operating in a new way" and states that the "specification concedes that in the claimed inventions, each of these conventional components is used in the conventional manner, to perform functions that have long been well-known to accomplish switching between networks."  (*Id.* at 16.)  Lastly, T-Mobile contends that neither the claims as a whole nor the individual claim elements "recite any technological innovations in cellular switching or networking functionality," but simply describe "conventional and well-understood steps of network detection and switching between networks." (*Id*. at 16-18.)

In response, Kaifi contends that there are disputes of fact whether certain claim elements, individually or in combination, are sufficient to transform the nature of the claims into something patentable.  Regarding the independent claims, Kaifi argues that there are factual disputes over whether it was conventional and well-understood at the time the patent was filed to "create computers that allow a user device to switch between two different wireless networks automatically and without interruption," "create computers that allow a user device to switch between two different networks based [on] the location of the user device," or use "indoor system ID [] to indicate that a terminal has moved indoors" while using "information on a location area []

9

to indicate an outdoor location for the terminal." (Dkt. No. 77 at 25-26.)  Kaifi further argues that the dependent claims recite additional elements over which there are factual disputes.  (*Id*.)  For example,  Kaifi contends there is a dispute over whether a network designs where "indoor system ID information to allow a switch to an indoor network only when that network was encountered previously" or "ongoing information regarding location vis-a-vis two distinct networks is taken into account as the device moves through specific locations" were well-known and conventional. (*Id*.)

The Court agrees with Kaifi.  There are clear factual disputes related to whether various elements of the asserted claims, alone or in combination, were conventional and well-understood at the time the patent was filed.  These are factual questions directly "underlying [] the § 101 inquiry." *Berkheimer*, 881 F.3d at 1368-69.  At the motion to dismiss stage of the case, these types of disputes must be presumed to favor the non-movant (*i.e.*, Kaifi).  *BASCOM*, 827 F.3d at 1347, 1350.  Dismissal under Fed. R. Civ. P. 12 is therefore not appropriate.

## IV.    CONCLUSION

Based on the foregoing, the Court is of the opinion that Defendants T-Mobile US, Inc., T-Mobile USA, Inc., MetroPCS Texas, LLC, T-Mobile West LLC, T-Mobile West Tower LLC, T-Mobile Resources Corporation, Layer3 TV, Inc., and L3TV Dallas Cable System, LLC's Motion to Dismiss for Lack of Patent Eligibility Under 35 U.S.C. § 101 should be and hereby is **DENIED**.

**So ORDERED and SIGNED this 3rd day of September, 2021.**

_____
RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE