# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| KAIFI LLC,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>T-MOBILE US, INC. and<br>T-MOBILE USA, INC.,<br><br>　　　　Defendants. | Case No. 2:20-CV-00281-JRG<br><br>Hon. Rodney Gilstrap |

## DEFENDANTS' REPLIES IN SUPPORT OF OPPOSED MOTIONS *IN LIMINE*

## TABLE OF EXHIBITS

| Exhibit | Document |
|---|---|
| Ex. U | Excerpts from the September 13, 2021 Deposition of James Proctor |
| Ex. V | Excerpts from the August 31, 2021 Deposition of Thomas Blackburn |
| Ex. W | Defendants' December 4, 2020 Initial and Additional Disclosures |
| Ex. X | Excerpts from the July 26, 2021 Expert Report of Thomas M. Conte, Ph.D. |
| Ex. Y | Transcript of March 31, 2021 Markman Hearing in the *AT&T* Litigation |

## TABLE OF ABBREVIATIONS

| Abbreviation | Meaning |
|---|---|
| 728 Patent | U.S. Patent No. 6,922,728 (Dkt. 1-2) |
| Asserted Claims | Claims 1, 2, 3, 5, 7, 10, 11, and 20 of the 728 Patent |
| *AT&T* or *AT&T Litigation* | *KAIFI LLC v. AT&T Inc.*, No. 2:19-CV-138-JRG (E.D. Tex.) |
| Br. | Dkt. 374 – Defendants' Opposed Motions *in Limine* |
| Dkt. | Docket Number |
| GWP | Golden Wave Partners |
| KAIFI | Plaintiff KAIFI LLC |
| ID | Intellectual Discovery |
| MIL | Motion *in limine* |
| Opp. | Dkt. 390 – KAIFI's Response to T-Mobile's Motions *in Limine* |
| T-Mobile | Defendants T-Mobile US, Inc. and T-Mobile USA, Inc. |

**MIL 1.**  In opposing both T-Mobile's summary judgment motion under Section 101 and this motion, KAIFI showed that it intends to make arguments to the jury that directly contradict the Court's Step 1 holdings and settled Section 101 law.  The arguments should be precluded.

First, KAIFI improperly intends to argue that the jury may find the claims unconventional at Step 2 because Mr. Proctor testified that the "router" of claim 1 is not a "standard, well-known router."  Opp. 1.  That argument is legally impermissible because, as KAIFI itself explains, Mr. Proctor clarified that what "makes [the router] *not* standard or well known" is that *it must perform the abstract idea*: it "gets information of the location of the data communication terminal from the location register and, based upon that determined location, it switches voice or data signals to the user by selecting the indoor or the outdoor network."  *Id.*; Ex. U at 51:6–11; *id.* at 247:18–248:17.  That testimony does not "correspond[] to the examples that the Court identified of disputed facts for *Alice* Step 2," as KAIFI wrongly contends.  Opp. 1.  Instead, the function Mr. Proctor identified maps exactly to what this Court has already held to be the abstract idea: "routing a communication on one path or another, based on the recipient's location."  Dkt. 216 at 7.  KAIFI's intended argument is therefore totally contrary to blackletter law holding that the abstract idea itself cannot provide the inventive concept at Step 2.  *BSG Tech LLC v. BuySeasons, Inc.*, 899 F.3d 1281, 1290 (Fed. Cir. 2018).  Moreover, KAIFI concedes that the claims do not "create[] a new piece of router equipment that did not exist before."  Opp. 2.  And contrary to KAIFI's contention, using "pre-existing equipment in a way that is new and yields unknown benefits" (*id.*) cannot satisfy Step 2 if, *as here*, the "new" use is simply an instruction to carry out an abstract idea on conventional equipment, with no recitation of the "critical 'how it does it' aspect."  *Voip-Pal.Com, Inc. v. Apple Inc.*, 411 F. Supp. 3d 926, 955 (N.D. Cal. 2019), *aff'd*, 828 F. App'x 717 (Fed. Cir. 2020).

KAIFI next seeks improperly to introduce evidence that T-Mobile purchased new network

equipment to enable "seamless" switching and to argue that the addition of new "structures *in T-Mobile's network . . .* is probative of *Alice* Step 2." Opp. 2 (emphasis added). That argument is irreconcilable with the law. What matters is what is *recited in the claim*, not what is in a product developed years later. Even if it were true that T-Mobile required new network structures to enable the accused "seamless" switching, it says nothing about what is recited in the claims. KAIFI's argument is nothing more than an effort to distract and mislead the jury.

KAIFI is also precluded as a matter of law from arguing that the functional result of "switching automatically and without interruption" satisfies Step 2, because nothing in the claims recites a concrete solution for achieving that result. Opp. 4. The Court already correctly held that "the claims *do not recite . . . a concrete solution* to the problem of determining the optimal router network path for voice or data transmission *automatically and without interruption*." Dkt. 216 at 7 (emphasis added). Thus, the result of "switching automatically and without interruption" cannot make the claims concrete, and KAIFI's vague suggestion that something about "combining the elements" enables the result (what KAIFI cannot say) adds nothing. *RecogniCorp, LLC v. Nintendo Co., Ltd.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017) ("[a]dding one abstract idea . . . to another abstract idea . . . does not render the claim non-abstract"). KAIFI should be precluded from making this argument and others that directly contravene the Court's order and settled Section 101 law.

**MIL 2.** KAIFI confirms its intent to inject T-Mobile's purported $3.3 billion spectrum purchase into this trial, but in doing so KAIFI confirms that the number has no relevance to this case. Opp. 5–8. KAIFI demonstrates that its "spectrum" narrative relates at most to the use of Wi-Fi Calling generally, *id.*, but the asserted claims are directed to *handover* functionality. KAIFI's damages expert, Mr. Kennedy, also offers no theory that includes this number as an input. Br. 3–4. Even if there were any minimal relevance to this narrative, there is no need or justification

for KAIFI to also wave the $3.3 billion purchase amount before the jury, which risks significant jury confusion and prejudice to T-Mobile.  Thus, if KAIFI is allowed to present its "spectrum" narrative, it should be precluded from introducing this unnecessary and highly prejudicial number.

Furthermore, despite Federal Circuit law holding that it is improper for a plaintiff to portray its damages demand as only a small fraction of a defendant's total revenues, *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1318–22 (Fed. Cir. 2011), KAIFI insists that it is entitled to do just that, by presenting damages numbers on a per-call and per-device basis.  Opp. 8.  The only purpose of those numbers is to telegraph to the jury that KAIFI's damages represent only small fractions of T-Mobile's revenues, which is improper under the law.

**MILs 3 and 4.**  T-Mobile disputes KAIFI's assertions as to MIL 3, but in view of page constraints, T-Mobile stands on its opening brief.  KAIFI materially misstates the record in opposing MIL 4, but agrees that "[n]either party should be advancing inconsistent positions on the meaning of the claims for validity and for infringement."  Opp. 10.  MIL 4 thus should be granted.

**MILs 5 and 6.**  "[W]illful blindness," which KAIFI confirms it intends to raise at trial, requires that a defendant "subjectively believe that there is a high probability that a fact exists." *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769 (2011).  None of the alleged "evidence" that KAIFI identifies in opposition could establish the threshold requirement that T-Mobile subjectively believed there was a high probability that the 728 Patent existed.  T-Mobile has explained in detail how each of KAIFI's willfulness arguments is wrong.  Dkt. 234; Dkt. 327.

Despite admitting in response to MIL 5 that T-Mobile had no actual knowledge of the 728 Patent, KAIFI falsely asserts there is evidence of copying.  KAIFI argues that its expert, Mr. Blackburn, opined "there was adoption and copying" by T-Mobile. Opp. 11.  That is not true.  He disclaimed his opinions on "copying" in deposition, and explained that "copying" simply referred

3

to the widespread adoption of Prof. Cho's invention—not that T-Mobile knew of the 728 Patent. Ex. V at 159:15–22. KAIFI thus has no argument that T-Mobile copied or stole the purported invention. *Iron Grip Barbell Co., Inc. v. USA Sports, Inc.*, 392 F.3d 1317, 1325 (Fed. Cir. 2004).

**MIL 7.** KAIFI contends it should be permitted to address whether an expert has worked for a party. Opp. 12. That would be unfair in this case, because the parties' circumstances are not the same: KAIFI was created solely to assert the 728 Patent, whereas T-Mobile cannot create a separate entity for the purpose of being sued for patent infringement. In effect, KAIFI seeks a double standard in which KAIFI can avoid introduction of its experts' prior work with KAIFI's related entities (*e.g.*, its parent entities, ID and GWP, and their subsidiaries), while reserving the ability to cross-examine T-Mobile's experts on their prior work for T-Mobile. This motion should be granted to avoid this inequitable result. If the parties are permitted to raise an expert's prior work with a party, however, the permission should, in fairness, extend to a party's related entities.

**MIL 8.** KAIFI confirms that it intends to read into evidence T-Mobile's interrogatory responses in order to suggest falsely that T-Mobile does not dispute infringement of claim 12. Opp. 12–13. That is not true. T-Mobile made clear in its December 2020 Initial Disclosures that it "has not infringed and does not infringe, willfully or otherwise, contribute to infringement of, or actively induce others to infringe, either literally or by application of the doctrine of equivalents to the extent properly asserted, any properly asserted claims of the Asserted Patent." Ex. W at 3. T-Mobile also stated in its Answer that "T-Mobile does not infringe, directly or indirectly, literally or under the doctrine of equivalents, any asserted claim of the 728 Patent." Dkt. 264 at 20, 11.

**MIL 9.** KAIFI telegraphs exactly how it intends to stray from this Court's claim construction order, especially with respect to the "router" limitation. That limitation, as construed, requires a "router" to "select[] one of the indoor and outdoor networks based on the location of the

data communication terminal stored in the location register." KAIFI's assertion that a component that *never* handles data from the indoor network can somehow "select[]" the indoor network contradicts this construction, including what it means to "select" a network. Opp. 13–14.

KAIFI apparently also intends to argue that the "router" need not decide (*i.e.*, select) which network should handle communication to a user device, and that instead the claim permits the user device to make that decision, with the router simply carrying out that decision. *See, e.g.*, Ex. X ¶¶ 473–74. That contradicts the plain language of the claims and the Court's claim construction opinion, which requires the router to make that decision. *See, e.g.*, Dkt. 176 at 34–35. Indeed, KAIFI's counsel disclaimed its current position at the *Markman* hearing in the *AT&T* Litigation while securing favorable claim constructions. For example, KAIFI's counsel argued that "the *router* is going to make decisions . . . about where is the most efficient way for this user to receive its data packets." Ex. Y at 12:1–5 (emphasis added). He reiterated that "[i]t's the *router deciding* which one of those [networks] you're going to switch to." *Id.* at 70:21–24 (emphasis added); *see also id.* at 24:6–13. KAIFI is judicially estopped from now arguing the opposite by contradicting the plain claim language and the Court's claim construction opinion.

**MIL 10.** KAIFI has no credible basis to discuss the Verizon litigation at trial in this case. If permitted, KAIFI can present testimony on the alleged adoption of Prof. Cho's invention without referencing the Verizon litigation. Opp. 14. The Verizon litigation also *does not* "show[] a decision to file lawsuits in serial fashion, as opposed to simultaneously," because KAIFI sued T-Mobile and Verizon *on the same day*. *Id.* And although irrelevant, KAIFI could argue it settled with AT&T "because it needed resources to sustain future litigation suits" without discussing the Verizon litigation. *Id.* at 14–15. Finally, Mr. Proctor has testified about his percentage of income from serving as an expert. *Id.* at 15. Referencing the Verizon litigation is thus unnecessary.

DATE: November 2, 2021                Respectfully submitted,

                                                GIBSON, DUNN & CRUTCHER LLP

By: */s/ Josh A. Krevitt*
    Josh A. Krevitt
    New York Bar No. 2568228
    Benjamin Hershkowitz
    New York Bar No. 2600559
    Katherine Q. Dominguez
    New York Bar No. 4741237
    Paul J. Kremer
    New York Bar No. 4900338
    **GIBSON, DUNN & CRUTCHER LLP**
    200 Park Avenue
    New York, New York 10166-0193
    Telephone: (212) 351-4000
    Facsimile: (212) 351-4035
    bhershkowitz@gibsondunn.com
    kdominguez@gibsondunn.com
    pkremer@gibsondunn.com

    Robert Vincent
    Texas State Bar No. 24056474
    Nathan R. Curtis
    Texas State Bar No. 24078390
    Audrey Yang
    Texas State Bar No. 24118593
    **GIBSON, DUNN & CRUTCHER LLP**
    2001 Ross Avenue
    Dallas, Texas 75201-2923
    Telephone: (214) 698-3423
    Fax: (214) 571-2961
    rvincent@gibsondunn.com
    ncurtis@gibsondunn.com
    ayang@gibsondunn.com

    Melissa R. Smith
    Texas State Bar No. 24001351
    **GILLAM & SMITH, LLP**
    303 S. Washington Ave.
    Marshall, Texas 75670
    Telephone: (903) 934-8450
    Facsimile: (903) 934-9257
    Melissa@gillamsmithlaw.com

    *Attorneys for Defendants T-Mobile US, Inc. and T-Mobile USA, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this notice was served on all counsel who have consented to electronic service, per Local Rule CV-5(a)(3)(A), on November 2, 2021.

*/s/ Josh A. Krevitt*
Josh A. Krevitt

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

The undersigned hereby certifies that, under Local Rule CV-5(a)(7)(B), the foregoing document is filed under seal pursuant to the Court's Protective Order entered in this matter.

*/s/ Josh A. Krevitt*
Josh A. Krevitt

8