**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

KAIFI LLC,

      Plaintiff,

      v.

T-MOBILE US, INC., ET AL.

      Defendants.

Case No. 2:20-cv-00281-JRG

JURY TRIAL DEMANDED

Honorable Rodney Gilstrap

**JOINT REPORT
PURSUANT TO NOVEMBER 10, 2021 STATUS CONFERENCE**

Pursuant to the Court's direction at the November 10, 2021 status conference, the parties conferred over Dkts. 140 and 153 and outstanding issues from the September 27, 2021 discovery hearing, and submit this joint report regarding disputes.

## 1.    DKT. 140 IS MOOTED

T-Mobile has agreed to accept the Court's suggested proposal, along with the following modifications requested by T-Mobile: Mr. Dongsuk Bae and Mr. Jaehyeong Park as the search custodians and the four search terms: (1) "728" AND "patent," (2) "6922728," (3) "0386092," and (4) "Dong Ho Cho," using the Korean equivalents of "patent" and "Dong Ho Cho."  T-Mobile agrees to withdraw the outstanding requests pending from it letters rogatory, so long as Verizon (a joint requestor) also agrees, and presuming that governing Korean procedures allow for their withdrawal.  T-Mobile shall report by November 22, 2021 on whether Verizon agrees, so that KAIFI can seek the assistance of the Court if needed.  ID agrees to produce the results of the email search as soon as practicable, and will inform T-Mobile on Monday November 22, 2021, of the date on which the documents will be produced, so that T-Mobile can seek assistance of the Court if needed.  Based on this, T-Mobile's motion at Dkt. 140 should be denied as moot.[1]

## 2.    DKT. 153 IS AGREED

T-Mobile withdraws its opposition.  Based on this, KAIFI's motion at Dkt. 153 should be granted.

## 3.    DISPUTES REGARDING T-MOBILE DISCOVERY AGREEMENTS

### KAIFI STATEMENT:

---

[1] T-Mobile requests that ID complete its production by November 23, 2021.  This was raised today for the first time and KAIFI's counsel has not had an opportunity to verify if that date is feasible for ID, but will check as soon as possible.  KAIFI expects that ID would comply as soon as it reasonably can.

At the September 27, 2021 hearing, the parties resolved a number of motions based on T-Mobile stipulations and agreements.  KAIFI does not believe that T-Mobile has complied with its promises.  The parties have conferred a number of times over the following issues.  This is KAIFI's understanding based on T-Mobile's last confirmed position.

- **Motion by KAIFI to Compel Technical Discovery from Defendants (Dkt. 171)**

(1) T-Mobile stipulated: "that all their OEMs, who provide phones on their network, test those phones to ensure compliance with T-Mobile's WiFi requirements."  September 27, 2021 Hearing Tr. at 8:14-17; *see* Dkt. 423 at 3.  In the parties' proposed pretrial order, KAIFI submitted this stipulation as an uncontested fact: "T-Mobile's OEMs, who provide the accused phones used on T-Mobile's network, test the phones to ensure their compliance with T-Mobile's Wi-Fi Calling requirements."  Dkt. 408 at 12 (item (4.)).  T-Mobile had refused to agree to this stipulated fact.  T-Mobile has now agreed that it will not back out of the stipulation.

(2) T-Mobile agreed: "T-Mobile is going to produce, to the extent it's available, information on data rate when the IMS -- in the IMS system."  September 27, 2021 Hearing Tr. at 8:20-22; *see* Dkt. 423 at 3.  Multiple different types of communications run over IMS, the primary system through which T-Mobile's accused switching system runs data.  This includes voice calls, video calls, and various other types of communications.   The purpose of this stipulation was to obtain information on the amount of data that was passing through IMS.  The language was intentionally broad to cover any period of time that T-Mobile kept such data.

On October 19, 2021, weeks after making this agreement, T-Mobile produced a document that it represented as showing the system's data rate.  However, this document only lists specific codec bit rates.  Codec bit rates are not the actual data rates of the system because there is no data provided on how often these codecs are used on IMS as opposed to other codecs.

In fact, the metadata for this document shows it was created just four days before, on October 15, 2021, by a legal analyst in T-Mobile's legal department.  It was clearly not a document generated in the ordinary course of business showing T-Mobile's actual system data rate.  T-Mobile claimed in writing as to this document: "T-Mobile has searched for and produced the information on IMS data rates it was able to find after a reasonable investigation."  T-Mobile did not indicate its legal department just created a document.  Having been called out for this behavior, T-Mobile now claims that this document was information provided by unnamed "T-Mobile engineers."  KAIFI has no idea what those engineers were reporting on, what they were asked to report on, or how they derived the data.  And if these engineers had information on data rates, they should have been provided for deposition during discovery.

The best analogy is the following.  IMS is a highway.  KAIFI seeks the number of gallons of gas used on that highway over whatever period of time that T-Mobile has data on.  All T-Mobile is producing is the average MPG of different types of cars that drive on the highway (these are the codecs).

At 10 p.m. Central today T-Mobile announced that it has produced additional documents. It is unclear why this was not disclosed earlier.  KAIFI will examine this data with its experts and report to the Court on what it actually provides.

- **Motion by KAIFI to Compel Damages Discovery from Defendants (Dkt. 177)**

(1) T-Mobile agreed to "search for and produce all communications with RPX regarding the Patent-in-Suit after reasonable investigation."  September 27, 2021 Hearing Tr. at 9:11-12; *see* Dkt. 423 at 3.  This agreement was not just to search for the 2019 RPX newsletter itself nor was it limited to a single individual.  Rather, it was to search for communications with RPX regarding the patent.  At no point in time did KAIFI agree that this search could be limited to a

single email custodian (Ms. Kalameris).  There are seven custodians in the legal department who have interactions with RPX, including Ms. Kalemeris.  The other six are Melissa Scanlan, Lauren Venezia, Beth Crowder, Alice Garber, Steve McGrath and John Murphy.  T-Mobile does not have to search every email account in the company.  But it cannot refuse to search the records of individuals who are known to interact with RPX.

At the summary judgment hearing, it appeared that T-Mobile was representing to the Court that it had no communications with RPX regarding the '728 Patent.  As far as KAIFI can understand, this is incorrect.  T-Mobile only searched Ms. Kalemeris' emails for communications with RPX regarding the '728 Patent.  For other custodians, T-Mobile only searched for the specific RPX newsletter.  Thus, although T-Mobile has now identified at least 7 current and former employees who receive RPX communications, it is KAIFI's understanding that T-Mobile has not searched all of their emails for RPX communications regarding the '728 Patent (other than just the specific RPX newsletter).  Moreover, even if the communications with RPX did not occur until post-suit, they would be relevant to issues of post-suit willfulness.

(2) T-Mobile agreed to "produce on a [yearly] basis the revenue it generates from its MVNO business."  September 27, 2021 Hearing Tr. at 9:13-14; *see* Dkt. 423 at 3.  MVNOs are third parties who purchase the right to use T-Mobile's network to sell cellular services.  T-Mobile has represented that all of the MVNO revenue data it produced relates solely to third-party arm's length transactions and do not involve transactions with affiliated companies.

**T-MOBILE STATEMENT:**

T-Mobile has complied with its promises and obligations from the September 27, 2021 hearing, as explained below in detail.

- **Motion by KAIFI to Compel Technical Discovery from Defendants (Dkt. 171)**

4

(1)  T-Mobile's rejection of the proposed stipulation in the parties' proposed pretrial order was an oversight.  T-Mobile agrees to stipulate to the following as an uncontested fact: "T-Mobile's OEMs, who provide accused phones used on T-Mobile's network, test the phones to ensure their compliance with T-Mobile's Wi-Fi Calling requirements."

(2)  T-Mobile has produced all documents and information that it was able to locate upon a reasonable search regarding data rates in the IMS system.  On October 19, 2021, T-Mobile produced two documents with information regarding the bit rates of codecs used for IMS communications.  This information was provided by T-Mobile engineers.  The fact that information was compiled into document form by T-Mobile's legal department to be produced is immaterial.  Today, T-Mobile produced two additional documents on bit rates for IMS communications.  *See* TMOBILE_KAIFI_00422048; TMOBILE_KAIFI_00422049.  The documents show the actual Real-time Protocol (RTP) average bit rate for the codecs used for EUTRAN (cellular) and Wi-Fi communications in T-Mobile's network over a 48-hour period. The fact that data exists in a particular form for Verizon does not mean the data exists in the same form for T-Mobile.

KAIFI's argument also attempts to shift what was agreed by the parties.  T-Mobile agreed to produce, to the extent available, information on "data rate" in the IMS system.  "Data rate" is traditionally expressed in the form Kbps (kilobits per second) or Mbps (megabits per second), and that is the form in which it was produced by T-Mobile.  Indeed, the dispute over "data rates" between Dr. Conte and Mr. Proctor is whether the average data rate for IMS communications is 40 Kbps (as Dr. Conte contends) or less (as Mr. Proctor contends).  The suggestion that KAIFI contemplated "daily, monthly, [or] yearly" information on the *total* data flowing through the IMS (as opposed to standard data rates) is not credible.

- **Motion by KAIFI to Compel Damages Discovery from Defendants (Dkt. 177)**

(1)  T-Mobile has produced all pre-suit and post-suit communications with RPX regarding the 728 patent located after a reasonable search, not limited to the specific RPX newsletter email identified by KAIFI.  Regarding that specific RPX newsletter email, T-Mobile identified seven current and former employees, all in the legal department, who may have received the newsletter email.  After further investigation, T-Mobile determined that only three employees had actually received the email, and none had opened it.  T-Mobile's investigation was not limited to the specific RPX newsletter email, however, nor was T-Mobile's investigation limited to one individual.  Rather, T-Mobile's investigation included a search for any communications with RPX regarding the 728 patent.  T-Mobile's investigation included interviews with all current employees who T-Mobile had reason to believe could have sent or received any such communications, as well as the extraordinary step of agreeing to search and produce emails from the in-house attorney in charge of this litigation, Sarah Kalemeris.  KAIFI selected Ms. Kalemeris and other T-Mobile employees as their email custodians pursuant to the ESI Order, and KAIFI provided search terms for all of these custodians intended to capture, among other things, any communications regarding the 728 patent.  T-Mobile also provided Ms. Kalemeris for deposition, where she testified that she is the main point of contact between T-Mobile and RPX and would be the person most likely to have any communications with RPX. T-Mobile produced all pre-suit and post-suit communications with RPX regarding the 728 patent identified after its investigation, *not* limited to the specific RPX newsletter email identified by KAIFI.  In addition to its discovery requests to T-Mobile, KAIFI issued a subpoena to RPX seeking, among other things, communications with T-Mobile regarding the 728 patent.

It is apparently KAIFI's position that it should be allowed, contrary to the ESI Order, to

6

add *six new* email custodians from T-Mobile's legal department (namely the other current and

former employees that T-Mobile initially identified as potentially receiving the RPX newsletter

email), and to search their emails for any *other* potential communications with RPX regarding

the 728 patent.  KAIFI has provided no justification to expand discovery for what amounts to a

classic fishing expedition.  T-Mobile has been more than reasonable in responding to KAIFI's

requests, including searching the email and providing a deposition of the in-house attorney in

charge of this case and the main point of contact with RPX.  KAIFI's request should be denied.

(2)  As KAIFI notes, T-Mobile agreed to produce on a yearly basis the revenue it

generates from its MVNO business.  T-Mobile has done so.  The data does not include any of

T-Mobile's own subsidiaries or brands.   T-Mobile itself does not have any "MVNOs."  By way

of example, MetroPCS is a wholly owned subsidiary of T-Mobile—not an MVNO—and revenue

of MetroPCS was not included in the information produced on revenue from T-Mobile's MVNO

business.  Thus, the revenue information is not skewed.


Date:   November 19, 2021                                  */s/* Robert Christopher Bunt

Robert Christopher Bunt
Texas Bar No. 00787165
PARKER, BUNT & AINSWORTH PC
100 E. Ferguson St., Suite 418
Tyler, Texas 75702
Telephone:  (903) 531-3535
Email: rcbunt@pbatyler.com

7

Jason G. Sheasby
Cal. Bar No. 205455 (admitted *pro hac vice*)
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067-4276
Telephone: (310) 277-1010
Facsimile: (310) 203-7199
Email: jsheasby@irell.com

Andrew Y. Choung
Cal. Bar No. 203192 (admitted in E.D. Texas)
NIXON PEABODY LLP
300 S. Grand Avenue, Suite 4100
Los Angeles, CA 90071
Telephone: (213) 629-6166
Facsimile: (213) 629-6001
Email: achoung@nixonpeabody.com

Enoch H. Liang
Cal. Bar No. 212324 (admitted in E.D. Texas)
LTL ATTORNEYS LLP
300 S. Grand Ave., 14th Fl.
Los Angeles, California 90071
Telephone:  (213) 612-8900
Facsimile:(213) 612-3773
Email:  enoch.liang@ltlattorneys.com

*Attorneys for Plaintiff KAIFI LLC*

Date:   November 19, 2021               */s/* Melissa R. Smith

Josh A. Krevitt
New York Bar No. 2568228
Benjamin Hershkowitz
New York State Bar No. 2600559
Katherine Q. Dominguez
New York Bar No. 4741237
Paul J. Kremer
New York Bar No. 4900338
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166-0193
Telephone: (212) 351-4000
Facsimile: (212) 351-4035
jkrevitt@gibsondunn.com

8

bhershkowitz@gibsondunn.com
kdominguez@gibsondunn.com
pkremer@gibsondunn.com

Robert Vincent
Texas State Bar No. 24056474
Nathan R. Curtis
Texas State Bar No. 24078390
Audrey Yang
Texas State Bar No. 24118593
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue
Dallas, Texas 75201-2923
Telephone: (214) 698-3100
Fax: (214) 571-2900
rvincent@gibsondunn.com
ncurtis@gibsondunn.com
ayang@gibsondunn.com

Melissa R. Smith
Texas State Bar No. 24001351
GILLIAM & SMITH, LLP
303 South Washington Avenue
Marshall, Texas 75670
Telephone:  903.934.8450
Facsimile:  903.934.9257
melissa@gilliamsmithlaw.com

*Counsel for Defendants T-Mobile US, Inc.
and T-Mobile USA, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that the foregoing document was served via electronic

mail on November 19, 2021 to all opposing counsel of record.


*/s/* Robert Christopher Bunt