IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| KAIFI LLC, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:20-CV-00281-JRG |
| | § | |
| T-MOBILE US, INC., T-MOBILE USA, INC., | § | |
| | § | |
| *Defendants*. | § | |

## ORDER

Before the Court is Defendants' Motion For Partial Summary Judgment Of No Direct Infringement By T-Mobile Of The Asserted System Claims Of U.S. Patent No. 6,922,728 (the "Motion") (Dkt. No. 232). In the Motion, Defendants T-Mobile US, Inc. and T-Mobile USA, Inc. (collectively, "T-Mobile") request that the Court grant summary judgment of no direct infringement of claims 1, 2, 3, 5, 7, 10, and 11 of U.S. Patent No. 6,922,728 because T-Mobile does not make, use, sell, or offer to sell the claimed system. Plaintiff Kaifi LLC ("Kaifi") contends that T-Mobile uses the claimed system both through the actions of its customers and its employees when testing the allegedly infringing system.

Having considered the Motion, as well as the associated briefing and the parties' oral arguments during the November 16, 2021 Pretrial Conference (the "Pretrial Conference"), and for the reasons set for below, the Court finds that the Motion should be and hereby is **GRANTED-IN-PART** and **DENIED-IN-PART**.

### I. BACKGROUND

Kaifi filed the above-captioned suit against T-Mobile on August 8, 2020, alleging infringement of U.S. Patent No. 6,922,728 (the "Patent-in-Suit"). (Dkt. No. 1.) Kaifi later elected

to pursue both direct and indirect infringement claims relating to claims 1, 2, 3, 5, 7, 10, and 11 (the "asserted system claims") and claim 20 (the "asserted method claim") of the Patent-in-Suit. (Dkt. No. 408 at 5-6.)  Kaifi accuses various T-Mobile products that include a "Wi-Fi Calling system and service" of infringing the Patent-in-Suit (the "accused phones").  (Dkt. No. 408 at 5-6.) Both parties agree that all the asserted system claims require an "indoor gateway" that satisfies the specific limitations of the individual claims.  (Dkt. No. 232 at 8; Dkt. No. 442 at 32:7-14.)  Kaifi has specifically accused Wi-Fi access points (e.g., home Wi-Fi routers and public hotspots) of satisfying the "indoor gateway" limitation of the asserted system claims.  (Dkt. No. 232 at 8; Dkt. No. 232-1 at ¶¶ 290-92; Dkt. No. 442 at 68:9-17.)

Following oral argument at the Pretrial Conference, the Court ordered additional briefing "regarding the connection from the user to the indoor gateway and how it's done, is it automatic." (Dkt. No. 442 at 33:18-34:3.)  The parties filed supplemental briefs on November 18, 2021.  (Dkt. Nos. 421, 422.)

## II.    LEGAL STANDARDS

Summary judgment is warranted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  Fed R. Civ P. 56(c)(2); *i2 Techs., Inc. v. Oracle Corp.*, 2011 WL 209692, at *2 (E.D. Tex. Jan. 21, 2011); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986).

To directly infringe a system claim of a patent, an accused infringer must "make[], use[], offer[] to sell, or sell[]" a device or instrumentality that includes all of the elements of the claim. 35 U.S.C. § 271(a); *Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*, 631 F.3d 1279, 1283-88 (Fed. Cir. 2011); *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 365 U.S. 336, 344 (1961).

"To 'use' [a claimed] system for purposes of infringement, [the accused infringer] must put the claimed invention into service, i.e., control the system and obtain benefit from it." *Centillion*, 631 F.3d at 1286; *see also Intellectual Ventures I LLC v. Motorola Mobility LLC*, 870 F.3d 1320, 1329 (Fed. Cir. 2017) (control of the system is "the ability to place the system as a whole into service").

### III.   ANALYSIS

There is no genuine dispute that T-Mobile does not make, sell, or offer for sale the complete accused system.[1] (Dkt. No. 232 at 8; Dkt. No. 279; Dkt. No. 442 at 6:9-12.) The central dispute in the Motion is therefore whether T-Mobile uses, i.e., "put[s] [] into service" the complete accused system. (Dkt. No. 232 at 9-10; Dkt. No. 279 at 8-12.)

For the following reasons, the Court finds that there is no genuine issue of material fact that T-Mobile does not use the allegedly infringing system when its customers use the accused phones and therefore **GRANTS** summary judgment of no direct infringement of the asserted system claims as to such uses. However, the Court also finds that there is a genuine issue of material fact as to whether T-Mobile uses the allegedly infringing system when it or its employees perform validation or other testing of the accused phones and therefore **DENIES** summary judgment as to such uses.

### a. T-Mobile Does Not Use the Allegedly Infringing System When Its Customers Use the Accused Phones.

T-Mobile contends that there is no genuine dispute of material fact that it does not use the claimed system when its customers use the accused phones for Wi-Fi calling or any other accused functionality. (Dkt. No. 232 at 9.) In particular, T-Mobile argues that the end user connects the

---

[1] Kaifi makes fleeting, underdeveloped arguments that T-Mobile sold Wi-Fi routers for a brief time at the beginning of the damages period and provides access to certain Wi-Fi hotspots. (Dkt. No. 279 at 5-6.) T-Mobile does not deny that point. (Dkt. No. 232 at 8.) However, there is no genuine dispute that T-Mobile's accused phones cannot connect to those routers or hotspots—or any other Wi-Fi routers or hotspots—without user intervention to establish the connection. (Dkt. No. 422-1 at 1; Dkt. 232-1 at ¶¶ 666–669; Dkt. No 233-1 at ¶ 267.)

accused phones (i.e., the claimed "data terminal") to a Wi-Fi access point (i.e., the claimed "indoor gateway") after purchase and after activation of the phone. (Dkt. No. 232 at 9.) According to T-Mobile, only after the user makes that decision is the allegedly infringing system complete and operational. (*Id.* at 9.) T-Mobile notes that it is left to the user's sole discretion whether to connect the accused phone to a Wi-Fi access point or to use the phone without Wi-Fi service at all and therefore without the accused functionalities. (Dkt. No. 232 at 9.) T-Mobile argues that this case is analogous to *Centillion*, where it contends the Federal Circuit provided that merely "mak[ing] the back-end processing elements" and "supplying the software for the customer" did not result in the manufacturer using the allegedly infringing system because "the system required putting into service the personal computer data processing means that the customer itself owned and controlled." (Dkt. No. 232 at 10 (citing *Centillion,* 631 F.3d at 1286).) In this case, according to T-Mobile, it is the end user and not T-Mobile that "put[s] into service" the indoor gateway and therefore the accused system. (*Id.*)

Kaifi responds that it is T-Mobile that puts the complete system into service because it controls the cellular network, obtains a benefit from the use of Wi-Fi calling, configures the phones to connect to Wi-Fi access points, and set the requirements both for connecting to Wi-Fi access points and for performing Wi-Fi calling. (Dkt. No. 279 at 8-12.) While Kaifi's technical expert concedes that user action is required to connect the accused phones to a Wi-Fi access point, (Dkt. No. 422-1 at 1; Dkt. 232-1 at ¶¶ 666–669; Dkt. No 233-1 at ¶ 267), it argues that T-Mobile is still the user of the allegedly infringing system because T-Mobile controls the system as a whole and decides whether to route calls over Wi-Fi or the cellular network. (Dkt. No. 279 at 8-9, 11.) Kaifi argues that this case is analogous to *GREE, Inc. v. Supercell Oy*, where it contends this Court ruled, "there was evidence for a jury to conclude that the defendant used the system under *Centillion* by

4

operating through software on end user devices, software on servers, and servers." (Dkt. No. 279 at 12 (citing *GREE, Inc. v. Supercell Oy*, 2020 WL 4931398 at *4 (E.D. Tex. July 18, 2020)).) Kaifi further argues that *Centillion* is distinguishable because there the Federal Circuit merely held that "supplying the software for the customer to use that interacted with a back-end server did not constitute use because the defendant never puts into service the personal computer data processing means." (Dkt. No. 279 at 11 (citing *Centillion*, 631 F.3d at 1286).) Lastly, Kaifi argues that the claims assume a system where the accused data terminal is "already registered" with the accused indoor gateway and therefore it is irrelevant whether the user must initially connect the accused phones to a Wi-Fi access point. (*See*, *e.g.*, Dkt. No. 421-1 at 1-3.)

The Court agrees with T-Mobile. Under Kaifi's theory of infringement in this case, the accused phones are not the complete infringing system—they must be connected to a Wi-Fi access point to infringe. (Dkt. No. 232-1 at ¶¶ 290-92.) It is undisputed that the accused phones, out of the box, cannot connect to a Wi-Fi access point until a user decides to do so. (Dkt. No. 422-1 at 1; Dkt. 232-1 at ¶¶ 666–669; Dkt. No 233-1 at ¶ 267.) It is therefore the customer, not T-Mobile, that completes the allegedly infringing system and puts it into service. This is entirely the decision of the customer. While Kaifi argues that T-Mobiles sets the requirements for the connection, configures the phones to perform Wi-Fi calling by default once connected, and instructs users on how to connect, those are all facts that may go towards proving indirect infringement by T-Mobile based on the act of direct infringement *carried out by the user*.

Kaifi also misreads this Court's opinion in *GREE* and the Federal Circuit's opinion in *Centillion*. This Court's decision in *GREE* was bound by the facts of that case, which involved "a server-client game system and service[] that [] require[d] that there be a connection between servers and client devices for the game to be operated" where "components [] are stored and

5

executed on servers owned and operated by Supercell." *GREE*, 2020 WL 4931398 at *4. Thus, while in that case the maintenance of "software on servers, and servers" along with "operating through software on end user devices" was sufficient to constitute use of the system by Supercell, *id.*, that does not change the principle from *Centillion* that the user of an allegedly infringing system is the one who "put[s] the claimed invention into service." *Centillion*, 631 F.3d at 1286-87. Here, the accused phones are operable with or without connection to a Wi-Fi access point, and it is at the sole discretion of the user whether to put into service the allegedly infringing system by connecting the phone to a Wi-Fi access point. Merely "supplying the [phone] for the customer to use is not the same as using the system." *Id.*[2]

Finally, although Kaifi argues that the claims assume a data terminal that is already registered with the indoor gateway, this argument only confirms why summary judgment is appropriate. It is undisputed that T-Mobile's accused phones do not constitute a data terminal that is "already registered" with the indoor gateway. It is still the customer that performs the vital step of registering the terminal with the gateway.

### b. There is a Genuine Issue of Material Fact as to Whether T-Mobile Uses the Allegedly Infringing System When It Tests the Accused Phones.

Kaifi also argues that T-Mobile uses the claimed system when it or its employees test the Wi-Fi calling capabilities of the accused phones. (Dkt. No. 279 at 7-8.) While T-Mobile argues

---

[2] Kaifi's reliance on *Travel Sentry, Inc. v. Tropp*, 877 F.3d 1370 (Fed. Cir. 2017) for vicarious liability is likewise unavailing. As an initial matter, Kaifi did not brief the issue of vicarious liability in its response to the Motion. While Kaifi included a single citation to *Travel Sentry* in its later briefing, (Dkt. No. 279 at 8-9), it did not describe any alleged benefit received by the customers or how T-Mobile conditioned receipt of a such a benefit upon use of the allegedly infringing system. Rather, it merely described benefits received by T-Mobile from the allegedly infringing system. (*Id.*) Kaifi returned to this argument in the supplemental letter brief ordered by the Court during the Pretrial Conference. (Dkt. No. 421-1 at 5.) Not only was this attempt inappropriate, as the Court ordered the brief to address *only* the question of whether the accused phones can automatically connect to a Wi-Fi access point, it was also too late. The Court deems any such argument waived. Even if it were timely, the argument fails on the merits. The Court concludes that the principles of *Centillion* apply to the system claims at issue here, and "it is entirely the decision of the customer" to connect the accused phones to a Wi-Fi access point. *Centillion*, 631 F.3d at 1287.

that Kaifi has presented no theory of damages for testing of the products by T-Mobile or its employees, it does not deny that in certain situations T-Mobile or its employees connect one of the accused phones to a Wi-Fi access point in order to perform validation or other forms of testing. (Dkt. No. 325 at 4; Dkt. No. 442 at 26:24-27:3.)  Kaifi contends that there is at least a genuine issue of material fact as to whether this testing is a use of the complete allegedly infringing system.

The Court agrees with Kaifi.  There is a genuine question of material fact as to whether T-Mobile uses the allegedly infringing system when it or its employees connect an accused phone to a Wi-Fi access point for testing purposes.  To the extent Kaifi can present evidence of those specific uses to the jury and quantify the damages associated with those specific uses based on its existing damages evidence and theories, it is free to do so.

## IV.  CONCLUSION

For the reasons stated above, the Court **GRANTS** summary judgment of no direct infringement of the asserted system claims by T-Mobile for use of the accused phones by its customers and **DENIES** summary judgment of no direct infringement of the asserted system claims by T-Mobile for use of the accused phones by it or its employees for testing purposes.

**So ORDERED and SIGNED this 30th day of November, 2021.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE